O

# United States District Court
# Central District of California

KEITH HUCKABY,

               Plaintiff,

     v.

CRST EXPEDITED, INC. et al.,

               Defendants.

Case № 2:21-cv-07766-ODW (PDx)

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT [108][109]; AND DENYING MOTION FOR DECERTIFICATION [115]**

## I.    INTRODUCTION

Plaintiff Keith Huckaby is a former long-haul truck driver for Defendants CRST Expedited, Inc. and CRST International, Inc. (together, "CRST"). (First Am. Compl. ("FAC") ¶¶ 6, 11–12, ECF No. 44.) Huckaby contends that CRST's compensation model does not comply with California law and he thus brings this class action asserting wage and hour violations. (*See id.* ¶¶ 39–122.) The Court certified a class of California CRST drivers for three of Huckaby's causes of action. (Order re Certification, ECF No. 60.) Now, both sides move for summary judgment, and CRST seeks to decertify the class. (ECF Nos. 108, 109, 115.) For the reasons below, the Court **DENIES** all three motions.[1]

---

[1] Having considered the papers filed in connection with the pending motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

CRST is an Iowa-based interstate motor carrier that provides long-haul expedited freight delivery services to customers across the forty-eight contiguous United States.  (Defs. Statement Uncontroverted Fact ("DSUF") 1, ECF No. 109-2[2]; Pl. Additional Material Fact ("PAMF") 36–37, ECF No. 119-1.[3])  CRST uses a team driver model, which means when one driver is on duty driving, the other driver is typically off duty inside or outside the truck's sleeper berth.  (DSUF 3–4.)  Huckaby was a CRST employee driver from approximately April 2019 to August 2020. (DSUF 2.)

The parties hotly dispute the basis of CRST's compensation model.  (*See, e.g.*, DSUF 20; PSGI 20.[4])  CRST asserts that it primarily compensates its drivers through load pay—a flat rate for delivering the load and performing all driving and nondriving tasks necessary for safe delivery.  (DSUF 20.)  According to CRST, the team driver's load pay is calculated from a basic formula: multiplying (i) a split of the number of computer-estimated miles associated with a load; and (ii) the per-mile compensation rate that a driver is assigned based on experience.  (DSUF 25.)  In contrast, Huckaby asserts that CRST promised to compensate its drivers based on actual miles, not by load or computer-estimated miles.  (PSGI 20, 25; PAMF 3.)

---

[2] Although the Court primarily cites the statements and evidence from papers filed in connection with CRST's motion for summary judgment, it has also considered all statements and evidence from papers filed in connection with Huckaby's motion for summary judgment.  As the statements and evidence substantially overlap, the Court primarily cites only one set for economy.  The same is true for arguments raised in both sets of summary judgment briefing.

[3] In contravention of the Court's Case Management Order, Huckaby restarts the numbering of his PAMF at "1."  (*See* Scheduling & Case Management Order ("Case Order") 7, ECF No. 27 (requiring additional facts to continue sequentially from the moving party's).)  Consequently, for clarity, the Court cites Huckaby's Statement of Genuine Issues ("PSGI") and PAMF separately, although they appear in the same document. (*See* PAMF; PSGI, ECF No. 119 1.)

[4] Both parties repeatedly violate the Court's Case Management Order by including extensive argument in the statements of fact and dispute.  (Case Order 7 ("No argument should be set forth in this document.").)  The parties' violations result in statements that are immensely overlong, burdensome, and time-consuming to navigate.  Strict compliance with Court procedures will be required going forward.

Based on this and related disputes, on March 9, 2022, Huckaby brought this putative class action raising nine causes of action under California and federal law. (*See generally* FAC.)   On March 14, 2022, pursuant to the parties' stipulation, the Court dismissed without prejudice Huckaby's sixth, seventh, and eighth causes of action.   (*See* Order Stip. Voluntary Dismissal, ECF No. 46.)   Accordingly, six of Huckaby's causes of action remain: (1) failure to pay minimum wages; (2) failure to pay statutory/contractual wages; (3) failure to reimburse business expenses; (4) failure to provide itemized wage statements; (5) failure to timely pay wages; and (9) violation of California's Unfair Competition Law ("UCL").  (*See* FAC ¶¶ 39–78; 114–22.)

On October 3, 2022, the Court granted in part Huckaby's motion for class certification and certified a class as to (1) minimum wages, (2) statutory/contractual wages, and (9) UCL violations.  (Order re Certification 13 n.7, 18.)  Subsequently, on April 10, 2023, the Court granted in part and denied in part CRST's motion for reconsideration.   (Order Recons. Certification, ECF No. 86.)   The Court denied CRTS's motion to the extent CRST sought to undo class certification, but the Court agreed to amend the end date of the class period.  (*Id.* at 8.)  The Court consequently defined the certified "Amended Piece-Rate Class" or "Class" as:

> All current and former employees that had a residential address in California and performed work as a truck driver for CRST ("CA Truck Driver") who were compensated by a piece-rate from August 9, 2017, through the date of the Court's April 10, 2023 order amending this class definition, excluding the participants in the settlement in *Montoya v. CRST Expedited, Inc.*, Case No. 16-cv-10095-PBS (D. Mass.).

(*Id.*)  Those who qualify for this class are "Class Members."

Huckaby now moves for partial summary judgment.  (Pl. Mot. Summ. J. ("PMSJ"), ECF No. 108.)   CRST also moves for summary judgment, or in the alternative, partial summary judgment.  (Defs. Mot. Summ. J. ("DMSJ"), ECF No. 109.)  Additionally, CRST moves to decertify the Amended Piece-Rate Class. (Defs. Mot. Decertify ("Mot. Decert."), ECF No. 115.)

### III.    MOTIONS FOR SUMMARY JUDGMENT

Huckaby seeks partial summary judgment on the issues underlying the three Class claims: minimum wage; contractual/statutory wage; and UCL. (PMSJ 1–2.) He argues the undisputed facts establish that CRST did not compensate Class Members for (1) conducting pre- and post-trip vehicle inspections; (2) completing required paperwork and data entry; (3) stopping and scaling the vehicles at weigh stations; (4) participating in Department of Transportation ("DOT") inspections; and (5) fueling the truck. (*Id.* at 1.) Huckaby contends that CRST's failure to compensate for these nondriving tasks violated California Labor Code sections 221, 223, and 226.2 and that CRST thus owes Class Members compensation for work done on these tasks. (*Id.* at 1–2, 9–16.)

CRST seeks summary judgment as to all claims, Class and individual. (DMSJ 1–2.) On the Class claims, CRST argues the undisputed facts establish that it compensated Class Members under a load-based piece-rate pay structure that encompasses all tasks necessary to safely deliver a load, and this load-based pay structure fully complies with California law. (DMSJ 1–2.) On Huckaby's individual claims, CRST contends the derivative wage statement and waiting time claims fail for the same reason as the Class claims and Huckaby's claim for unreimbursed cell phone expenses fails as a matter of law. (*Id.* at 2.)

### A.    Evidentiary Objections

Huckaby and CRST each object to the other's evidence. (Defs. Obj. ISO Opp'n PMSJ, ECF No. 121-2; Pl. Obj. ISO Opp'n DMSJ, ECF No. 119-4; Defs. Obj. ISO Reply DMSJ, ECF No. 126-4.) Preliminarily, the parties do not comply with the Court's Case Management Order, which requires evidentiary objections to track the separate statements' paragraph numbers. (Case Order 8.) Nevertheless, to the extent feasible, the Court has cross-referenced the various objections with identifiable evidence and considered the parties' relevant objections.

Where the objected evidence is unnecessary to the resolution of the summary judgment motions or supports facts not in dispute, the Court declines to resolve those objections here.   The remaining relevant evidentiary objections are premised on foundation, hearsay, and extrinsic evidence.   First, foundation-based objections are moot in the context of summary judgment.  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).   Further, while a court may not *grant* a summary judgment motion on the basis of hearsay evidence, it may *deny* a summary judgment motion on the basis of hearsay evidence, "as long as a court finds that [the] hearsay evidence could be presented in an admissible form at trial."  *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1157 (S.D. Cal. 2022); *accord Fraser v Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).   Finally, to the extent the Court relies on objected to evidence in this order without further discussion, including extrinsic evidence, those objections have been thoroughly considered and are hereby overruled.  *See Burch*, 433 F. Supp. 2d at 1122 (proceeding with only necessary rulings on evidentiary objections).

**B.    Legal Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *See id.* at 324; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party

must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics*, *Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 250). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Thus, when parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006). The court considers "each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced. *Id.*

**C.    Discussion**

The parties' primarily dispute whether CRST's piece-rate pay structure compensated Class Members by the mile or the load.  (*See* DMSJ 9–16; PMSJ 9–19.)  Additionally, CRST argues that California minimum wage laws do not apply to Class Members' work performed outside of California.  (DMSJ 16–19.)   Finally, CRST contends it is entitled to summary judgment on the UCL and individual claims as a matter of law.  (DMSJ 16, 19–21.)

*1.    Piece-Rate Pay Structure*

CRST argues the "piece" in its piece-rate pay structure is the "safe delivery of a load," which includes all necessary nondriving tasks directly related to delivery of the load.   (DMSJ 1.)   Huckaby argues the "piece" for which CRST promised compensation is miles driven, not load delivered, and this pay structure violates California wage laws because it does not compensate drivers for required nondriving tasks.  (PMSJ 1–2.)

California law guarantees a minimum wage but also expressly protects employees' right to receive the wages promised in a contract.  *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 780 (2020).   This means that an employer may not underpay wages promised in a contract.  *Id.*   Nor may an employer "borrow[]" wages from hours compensable per the contract to satisfy the statutory minimum wage.  *Id.*  For example, "an employer who contracts to pay $18 per hour for two hours of work, but who then demands a third hour of unpaid work, cannot argue that it has complied with a $12 hourly minimum wage because it has paid $36 over three hours."  *Id.* (citations omitted).   Rather, to satisfy its contractual and statutory obligations, "the employer must pay the full $18 required by contract for the first two hours," and "no less than the applicable minimum wage" for the third uncontracted hour.  *Id.*

This prohibition on wage borrowing applies equally to piece rate compensation structures.  *Id.* at 781.   "Under a piece-rate system, employers pay their employees not by the number of hours worked, but rather by the number of activities, tasks, or units

of production completed, such as the quantity of produce picked, the amount of carpet installed, or the number of miles driven." *Ayala v. U.S Xpress Enters., Inc. (Ayala I)*, No. 5:16-cv-00137-GW (KKx), 2020 WL 3071707, at *6 (C.D. Cal. June 9, 2020), *aff'd*, 851 F. App'x 53 (9th Cir. 2021). The California legislature enacted Labor Code section 226.2 to codify the prohibition on wage borrowing under piece-rate systems. *Nisei Farmers League v. Lab. & Workforce Dev. Agency*, 30 Cal. App. 5th 997, 1006 (2019). Under section 226.2, an employer who pays by the piece must also provide separate compensation for "other nonproductive time." *Ayala v. U.S. Xpress Enters., Inc. (Ayala II)*, 851 F. App'x 53, 54 (9th Cir. 2021); Cal. Lab. Code § 226.2(a)(1). "Other nonproductive time" is defined as "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate basis." *Ayala I*, 2020 WL 3071707, at *7; Cal. Lab. Code § 226.2.

As "'[t]he compensation owed employees is a matter determined primarily by contract,' section 226.2 permits an employer and its employees to define the scope of its piece-rate compensation system." *Ayala II*, 851 F. App'x at 54 (citation omitted) (quoting *Oman*, 9 Cal. 5th at 781)). Thus, to determine the scope of the piece-rate pay, courts must look to the "mutual intention of the parties as it existed at the time of contracting." *Oman*, 9 Cal. 5th at 782 (quoting Cal. Civ. Code § 1636); *accord Ayala II*, 851 F. App'x at 54.

Huckaby argues CRST agreed to pay Class Members a piece-rate by the *mile* and does not compensate them for required nondriving tasks. (PMSJ 1–2.) He contends CRST unlawfully borrows wages from the per-mile piece-rate to compensate for the nondriving tasks in violation of California labor law. (*Id.* at 1, 12.) In contrast, CRST argues it agreed to pay Class Members a piece-rate by the *load*, using a computer formula that calculates the number of miles required to complete a safe delivery. (DMSJ 9–10.) CRST contends the nondriving tasks Huckaby identifies are all attendant to safely delivering a load, and thus CRST does not unlawfully "borrow

wages" to compensate for the nondriving tasks. (DMSJ 10.) Thus, the parties' disagreement boils down to the scope of the agreed-upon piece: CRST's "load-based pay structure," (DMSJ 1), or Huckaby's "per-mile rate," (PMSJ 1).

Huckaby points to CRST's Wage Verification Pay Scale documents as the parties' agreement, arguing this document is the only compensation plan that Class Members signed. (PMSJ 5; PAMF 2 (citing Decl. Shadie L. Berenji ISO Opp'n DMSJ ("Berenji Opp'n Decl.") Exs. 30 ("Wage Verification Pay Scale 2018"), 31 ("Wage Verification Pay Scale May 2021"), 32 ("Wage Verification Pay Scale Dec. 2021"), ECF No. 119-3)); *see also* Decl. Lee Coblentz ISO DMSJ ("Coblentz DMSJ Decl.") ¶ 16, Ex. D ("Sample Wage Verification"), ECF No. 109-3.) He contends these pay scale documents are evidence that CRST compensated Class Members by the mile because the documents represent that "[p]ay rates are based on Split Mile Pay." (*E.g.*, Sample Wage Verification (indicating 0.40 cents/mile); *accord* PMSJ 5–6.) A driver with CRST signs this Wage Verification, in part, to acknowledge the driver's specific experience-based rate: "My wage rate will be _____ cents per mile." (*See, e.g.*, Wage Verification Pay Scale May 2021.) This supports Huckaby's position that the compensation structure is a per-mile piece-rate.

CRST argues that nothing in the Wage Verification or pay scale suggests that CRST was compensating drivers only for miles. (Reply ISO DMSJ 3, ECF No. 126.) Indeed, the Wage Verifications clearly provide for a rate enhancement when a load is booked as Hazardous Materials. (*See, e.g.*, Wage Verification Pay Scale May 2021.) This supports CRST's position that the per-mile rate is simply one input to the formula for calculating load-based pay. (*See* DMSJ 1, 9–10; *see also* Cobletz DMSJ Decl. ¶ 15 ("Compensation for safe delivery of a load uses a simple pay formula where payment is calculated using . . . the number of computerized miles associated with a load [multiplied by] the [driver's] per mile rate.").)

However, nothing in the Wage Verification Pay Scale documents suggest which specific tasks are included or excluded from the scope of the "piece" for which CRST

compensated drivers.  (*See e.g.*, Wage Verification Pay Scale May 2021.)  Therefore, these documents are ambiguous in that they can be construed to support both parties' versions of the piece-rate.  As such, the Court must look to other evidence to determine the parties' mutually intended scope of the compensated piece.

Far from resolving the question, the additional evidence the parties proffer only further highlights that a genuine dispute exists concerning the meaning of the parties' agreed-upon "piece."  For instance, Huckaby points to CRST recruitment materials with talking points that emphasize "[m]iles = money" to argue that CRST paid drivers by the mile.  (PAMF 6; Berenji Opp'n Decl. Ex. 21 ("Recruiting Manual 2019–20") at CRSTF391212, ECF No. 119-3; *see also* PMSJ 4–5 (discussing recruitment, training, and onboarding policies).)  But these talking points are not directives to recruiters, merely suggestions, and establish nothing regarding CRST's compensation structure.  (*See* Recruiting Manual 2019–20 at CRSTF391191; *see also* Defs. Resp. PAMF 6, ECF No. 126-1.)

Similarly, CRST points to its Driver Handbooks from 2014, 2016, 2021, and 2023, to argue that it has always paid drivers by the load and included nondriving tasks in the definition of the "normal duties" attendant to safe delivery of a load. (DMSJ 6–7; Decl. Angela Stastny ISO DMSJ ("Stastny DMSJ Decl.") Exs. A–D, ECF No. 109-4.)  However, only two Handbooks expressly include nondriving tasks in "normal duties" or "job functions": the 2014 Handbook and June 2023 Handbook. (*See* Stastny DMSJ Decl. Ex. A ("2014 Handbook") CRSTF407677 ("Normal duties of a driver include but are not limited to pre-trip and post-trip inspections, fueling, driving, travel and waiting time . . . , completing paperwork, [and] loading and unloading the freight . . . ."), Ex. D ("June 2023 Handbook") CRSTF390322 (including similar tasks for "job functions in completing the trip and delivering the load").)  Neither of these Handbooks was effective during the Class Period in this case, August 9, 2017, through April 10, 2023.

CRST concedes that, in 2016, before the Class Period, it made significant edits to its Driver Handbook. (Stastny DMSJ Decl. ¶ 8.) In doing so, CRST removed the "normal work duties" section. (*Id.*) Although CRST argues the revisions did not alter "CRST's longstanding compensation policies for company drivers," (*id.* ¶ 10), the undisputed fact is that the Driver Handbooks in effect during the Class Period did not explicitly define a Class Member's normal duties or job functions as including the nondriving tasks at issue here. (*See* Stastny DMSJ Decl. Exs. B–C.) Further, the Driver Handbooks in effect during the Class Period both state "This Handbook supersedes any prior versions published or distributed by the Company . . . ." (*E.g.*, Berenji Opp'n Decl. Ex. 49 ("2016 Handbook") at CRSTF000911, ECF No. 119-3.)

The above disputes are sufficient to demonstrate that a genuine issue of material fact exists regarding the parties' mutually intended scope of the compensated piece in CRST's piece-rate. The Court need not wade into the conflicting Class Member testimony, the disputed CRST employee testimony, or the various interpretations of Class Members' wage statements. Suffice it to say that additional evidence only solidifies the intractable triable issue as to the agreed-upon "piece."

The parties' further arguments on this point do not alter this conclusion. While a written policy explicitly incorporating nondriving tasks into the piece rate may suffice to establish a mutual understanding that these tasks *are* included, the absence of such an explicit written policy does not conclusively prove the inverse, that the nondriving tasks *are not* included. *See Ayala I*, 2020 WL 3071707, at *11, 18 (granting summary judgment for defendant for the time period following "issuance of USX's 2013 driver handbook," which explicitly included nondriving tasks in the piece rate, but finding a triable issue of fact precluded summary judgment as to whether that was the case before the 2013 handbook issued).

For the same reason, although CRST claims its compensation system remained the same for over thirty years irrespective of revisions to the Driver Handbooks, "the record does not support a finding that the parties agreed that the" piece rate here

included all load-based tasks.  *Id.* at 11 (denying summary judgment because, even if "the payment system [was] the same, the record does not support a finding that the parties agreed that the compensation covered all delivery-related tasks").

Finally, summary judgment is not warranted for the time period following issuance of the June 2023 Handbook because that Handbook is immaterial to the Amended Piece Rate Class, as defined.  (*See* Order Recons. Certification 8 (defining class to include those "who were *compensated* by a piece-rate" from August 9, 2017, to April 10, 2023, not those who were *hired* during the Class Period (emphasis added)).)

Accordingly, the Court **DENIES** Huckaby's motion for summary judgment in full, because a triable issue exists regarding the parties' mutual understanding of the agreed "piece" in CRST's piece-rate compensation system.  For the same reason, the Court **DENIES** CRST's motion for summary judgment as to Huckaby's minimum wage and statutory/contractual wage claims.[5]

### 2.    Minimum Wage

CRST next argues Class Members' minimum wage claim must be limited to time worked in California because "California's minimum wage laws do not apply to work performed outside of California."  (DMSJ 16–19 (emphasis omitted).)  CRST also contends that the evidence in this case does not present the kinds of California connections sufficient to trigger application of California law.  (*Id.* at 17.)

In certifying the Amended Piece-Rate Class, the Court found the evidence presented at that time was sufficient to apply California law, based on the California Supreme Court's decision in *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732 (2020).  (Order re Certification 11–12.)  In *Ward*, the court established a test for evaluating

---

[5] This denial encompasses rejecting CRST's argument for summary judgment concerning "directly-related activities," in which CRST contends nondriving tasks are "directly-related" to safe delivery of the load.  As the agreed-upon "piece" remains in dispute and this necessarily includes what may be considered "directly-related" to the piece, summary judgment is not appropriate for tasks "directly-related" to the piece.

whether California employment law applies to interstate employees who do not work a majority of the time in any single state.  9 Cal. 5th at 760.  Rather than looking only to the extraterritoriality or intraterritoriality of a statute, the court found the "better question is what kinds of California connections will suffice to trigger the relevant provisions of California law."  *Id.* at 752 ("[T]he connections that suffice for purposes of one statute may not necessarily suffice for another.").  To evaluate the sufficiency of California connections where an interstate employee does "not work principally in any one state, a court should consider . . . whether the employee has a definite base of operations in California, in addition to performing at least some work in the state for the employer."  *Id.* at 760.  An employee may be considered as based in California if "California serves as the physical location where the worker presents himself or herself to begin work."  *Id.* at 755.

Although the court in *Ward* was concerned with section 226, which governs wage statements, courts have applied the *Ward* connections test to substantive wage laws as well, such as overtime and minimum wage, for work performed outside of California.  *See, e.g.*, *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1136–38 (9th Cir. 2021) (considering *Ward* and applying California overtime law to California residents' out-of-state work for a California-based employer).  The Court agrees with these decisions and finds that the policies underlying California substantive wage and hour laws support the availability of minimum wage protections where sufficient California connections exist per *Ward*, irrespective of whether the work to be compensated is performed within or outside of California.  Accordingly, the Court rejects CRST's first challenge on this point.

Turning to CRST's second challenge—that the evidence fails to establish sufficient California connections to apply California law, (DMSJ 18–19)—the Court previously found the evidence supported that Class Members effectively had a "designated home-base" in California and this was sufficient to support application of California law to Class Members' minimum wage claim.  (Order re Certification 12.)

The evidence before the Court on summary judgment also supports that finding. Class Members are all California residents, they store their trucks at the CRST terminal in Riverside, California or another local location approved by CRST, and most were hired, onboarded, and completed their training at the Riverside location. (*See, e.g.*, PAMF 36–40.)  CRST's arguments to the contrary are unpersuasive.  That Class Members had the *option* of completing their training and storing their trucks elsewhere, and that CRST itself is based in and dispatches routes from Iowa, (Defs. Resp.  PAMF 38, 40), does not negate Class Members' sufficient California connections.

In light of the strong public policies underlying California minimum wage law, including "to ensure that workers receive adequate and fair pay," *Oman*, 9 Cal. 5th at 789, the Court finds the undisputed evidence is sufficient as a matter of law to establish California connections that support application of California law to Class Members' minimum wage claim, irrespective of whether the work was performed within or outside of California.  Accordingly, the Court **DENIES** CRST's motion for summary judgment as to application of California minimum wage law to Class Members' work performed outside of California.

3.    UCL

CRST also argues that the UCL claim fails for two reasons: (1) Huckaby lacks standing to seek injunctive relief, specifically, because he is not a current CRST employee, and (2) he also lacks standing to pursue a UCL claim, generally, because he has adequate remedies at law.  (DMSJ 16.)  Through the UCL claim, Huckaby seeks both injunctive relief and restitution.  (FAC, Prayer ¶¶ 11–12.)

Former employees lack standing to seek injunctive relief against their employer's employment practices. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011).  Huckaby does not dispute that he is a former employee or oppose CRST's motion for summary judgment as to UCL injunctive relief.  (PSGI 2; *see*

*generally* Opp'n DMSJ 18–19, ECF No. 119.)  As Huckaby is not currently employed by CRST, he has no claim for injunctive relief.

Even where injunctive relief is not awarded, a UCL plaintiff may still recover restitution.  *ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.*, 14 Cal. 4th 1247, 1270–71 (1997).  However, to do so, he must establish that he lacks an adequate remedy at law.  *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Huckaby contends that Class Members have no adequate remedy at law for the first year of the Class Period because, while the UCL carries a statute of limitations of four years, the Labor Code provides only three years.  (Opp'n DMSJ 18.)  Yet, this does not establish that the existing remedy is inadequate, "only that additional damages may be available."  *Wood v. Marathon Ref. Logistics Serv. LLC*, No. 4:19-cv-04287-YGR, 2024 WL 2242688, at *10 (N.D. Cal. Mar. 21, 2024).  "Consistent with other courts that have considered this question, this Court holds that [Huckaby has] not demonstrated why a three-year statute of limitations for [the] Labor Code claims renders [his] legal remedies inadequate under the Labor Code."  *Id.* (internal quotation marks omitted) (collecting cases); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) ("[The] failure to have timely pursued his [legal] claim cannot confer equitable jurisdiction on a federal court to entertain his UCL claim.").

Therefore, Huckaby lacks standing to pursue restitution or injunctive relief under the UCL.  Consequently, the Court lacks equitable jurisdiction over this claim. *Diaz v. Ga. Pac. Corrugated LLC*, No. 2:21-cv-02151-DMG (KSx), 2022 WL 20689543, at *3 (C.D. Cal. Oct. 27, 2022) ("[F]ederal courts lack equitable jurisdiction of [UCL] claims if the plaintiff could have obtained an adequate remedy at law, even where that legal remedy is now barred by the statute of limitations."). Huckaby requests, in the event the Court finds it lacks equitable jurisdiction, the Court sever the UCL claim and remand it to the state court.  (Opp'n DMSJ 18–19.)  At this late stage in the proceedings, the Court finds it would be inequitable and prejudicial to sever and remand as Huckaby requests.

1  Accordingly, the Court **DENIES** CRST's motion for summary judgment as to
2  the UCL claim and **DISMISSES** that claim without prejudice and without leave to
3  amend, for lack of equitable jurisdiction.  *See Guzman*, 49 F.4th at 1313 ("Because the
4  district court lacked equitable jurisdiction . . . it should have denied [defendant's]
5  motion for summary judgment and dismissed [plaintiff's] UCL claim without
6  prejudice for lack of equitable jurisdiction.").

7      *4.  Individual Claims*

8      CRST's last argument on summary judgment is that Huckaby's remaining
9  individual claims for unreimbursed cell phone expenses and derivative wage statement
10 and waiting time penalties fail as a matter of law.  (DMSJ 19–21.)

11     First, the wage statement and waiting time penalty claims are derivative of the
12 minimum wage and contractual/statutory wage claims.  Thus, the same triable issues
13 discussed above also preclude summary judgment here.

14     Next, regarding unreimbursed cell phone expenses, under California law, "[a]n
15 employer shall indemnify his or her employee for all necessary expenditures or losses
16 incurred by the employee in direct consequence of the discharge of his or her duties."
17 Cal. Lab. Code § 2802(a).  "[W]hen employees must use their personal cell phones for
18 work related calls, [California] Labor Code section 2802 requires the employer to
19 reimburse them."  *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1078 (9th Cir. 2020)
20 (alterations in original).  However, ascertaining whether an expense is "necessary"
21 "depends on the reasonableness of the employee's choices."  *Gattuso v. Harte Hanks*
22 *Shoppers, Inc.*, 42 Cal. 4th 554, 569 (2007).

23     CRST argues it was not necessary or reasonable for Huckaby to use his cell
24 phone on the job because he could have used the onboard Qualcomm system in his
25 truck to communicate with CRST for all work-related tasks.    (DMSJ 19–20.)
26 Huckaby's deposition testimony supports that he had a Qualcomm system in his truck
27 and that he routinely used it to communicate with CRST.  (DSUF 49 (citing Decl.
28 Charles  Andrewscavage  ISO  DMSJ  ("Andrewscavage  DMSJ  Decl.")  Ex.  A

("Huckaby Tr. DMSJ"), ECF No. 110).)  However, Huckaby also testified that the Qualcomm system would "go down" unpredictably, meaning he needed to use his cell phone to communicate with CRST at least occasionally.  (PSGI 49 (citing Berenji Opp'n Decl. Ex. 5 ("Huckaby Tr. Opp'n DMSJ") 109:16–110:8, ECF No. 119-3.)  Thus, the evidence demonstrates a triable dispute of fact as to whether it was reasonable or necessary for Huckaby to use his cell phone for work-related tasks.

CRST argues Huckaby testified that he used his cell phone "every day" for his job, and that this is demonstrably false because he identified only twelve work-related calls totaling twenty-eight minutes over the entirety of his employment with CRST. (Defs. Resp. PSGI 49 (citing Andrewscavage DMSJ Decl. Ex. M ("Huckaby Cellphone Records")), ECF No. 126-1.)  This inconsistency goes to Huckaby's credibility and is for the jury to evaluate when considering whether it was reasonable or necessary for him to use his cell phone for work-related tasks.  It does not negate that Huckaby did, at times, use his cell phone for work.

Accordingly, the Court **DENIES** CRST's motion for summary judgment on Huckaby's individual claims for unreimbursed cell phone expenses and derivative wage statement and waiting time penalties.

**D.    Conclusion—Summary Judgment**

For the reasons discussed above, the Court **DENIES** both motions for summary judgment in full.  (PMSJ, ECF No. 108; DMSJ, ECF No. 109.)  Also, the Court **DISMISSES** Huckaby's UCL claim, without prejudice and without leave to amend.

## IV.    MOTION FOR DECERTIFICATION

The Court previously found that Huckaby's causes of action for minimum wages and statutory/contractual wages were appropriate for class treatment and certified the Amended Piece-Rate Class on those claims.  (Order re Certification 18.)[6] CRST now moves to decertify the Amended Piece-Rate Class.  (Mot. Decert.)

---

[6] The Court also certified the class as to the UCL claim.  (Order re Certification 18.)  As the Court dismisses the UCL claim, it need not consider that claim in the context of CRST's motion to decertify the class.

### A.   Legal Standard

A district court has discretion to decertify a class.   *See Knight v. Kenai Peninsula Borough Sch. Dist.*, 131 F.3d 807, 816 (9th Cir. 1997)); Fed. R. Civ. P. 23(c)(1)(C).   The "party seeking decertification bears the burden of demonstrating that the elements of Rule 23 have not been established." *Zakaria v. Gerber Prods. Co.*, No. 2:15-cv-00200-JAK (Ex), 2017 WL 9512587, at *16 (C.D. Cal. Aug. 9, 2017) (collecting cases) (quoting *Cole v. CRST, Inc.*, 317 F.R.D. 141, 144 (C.D. Cal. 2016)).   "This burden is relatively heavy, since any doubts regarding the propriety of class certification should be resolved in favor of certification." *Sandoval v. M1 Auto Collisions Ctrs.*, No. 13-cv-03230-EDL, 2016 WL 6561580, at *12 (N.D. Cal. Sept. 23, 2016) (internal quotation marks omitted).   A motion for decertification should not be granted "except for good cause, such as discovery of new facts or changes in the parties or in the substantive or procedural law." *Morales v. Kraft Foods Grp., Inc.*, No. 2:14-cv-04387-JAK (PJWx), 2017 WL 2598556, at *20 (C.D. Cal. June 9, 2017) (internal quotation marks omitted).

### B.   Discussion

The Court previously found that the Amended Piece-Rate Class satisfied the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.   (Order re Certification 5–9); *see* Fed. R. Civ. P. 23(a); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (demanding all four Rule 23(a) requirements for class treatment).   Additionally, the Court found that the class satisfied the predominance and superiority necessary for certification under Rule 23(b)(3).   (Order re Certification 9–13); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) ("[T]he proposed class must satisfy at least one of the three requirements listed in Rule 23(b).").

CRST argues decertification is warranted for two reasons: (1) discovery has revealed that individual issues will predominate at trial over common questions, and (2) class treatment is not superior because Huckaby's damages model lacks common

proof, making trial on a class-wide basis unmanageable.    (Mot. Decert. 1–2.)
Huckaby responds that CRST's latest attempt to avoid class treatment is merely a
rehashing of its failed arguments raised in opposition to the class certification and in
support of its motion for reconsideration.  (Opp'n Decert. 1, ECF No. 120.)

     *1.    Predominance*

     CRST first argues that individual issues predominate over common questions
concerning Huckaby's minimum and contractual wage claims.  (Mot. Decert. 6–15.)
CRST contends that the scope of CRST's piece-rate compensation plan must be
determined by considering what each individual driver understood the "piece" to
cover.  (*Id.*)  The Court has already rejected this argument:

> Although an employee's testimony can be relevant in interpreting a
> piece-rate pay plan, *see* [*Ayala I*, 851 F. App'x at 54], this does not mean
> that each employee is subject to an individualized piece-rate plan, the
> scope of which differs from employee to employee based on their
> subjective understanding. In determining the scope of any contract,
> including CRST's Piece-Rate Pay Plan, "the relevant intent is . . . the
> objective intent as evidenced by the words of the instrument, not a party's
> subjective intent."    Here, Huckaby presents evidence that CRST's
> Piece-Rate Pay Plan applies uniformly to all putative class members.
> The Court finds that interpreting CRST's uniform Piece-Rate Pay Plan is
> a common issue driven by the parties' objective intent and that individual
> issues will not predominate.

(Order re Certification 10–11 (second alteration in original) (citations omitted).)

     CRST offers nothing new in its motion for decertification that alters the Court's
previous conclusion.  That discovery now reveals Class Members may have different
subjective understandings of the piece-rate plan does not prevent a jury from resolving
the single predominating common question based on representative evidence
presented at trial: what is the uniform "piece" for which CRST compensated Class
Members.  Representative evidence of CRST's uniform pay policy remains sufficient
to satisfy predominance.  *See Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1088 (9th Cir.
2020) ("Representative evidence may include the testifying plaintiffs . . . ."); *Taylor v.*

*Fedex Freight, Inc.*, No. 13-cv-1137-LJO-BAM, 2015 WL 2358248, at *11 (E.D. Cal. May 15, 2015) (finding proof of defendant's uniform pay policy was sufficient to satisfy predominance for class certification), *report and recommendation adopted*, 2015 WL 4557412 (E.D. Cal. July 27, 2015).[7]

  2. *Superiority*

  CRST also challenges superiority by arguing that Huckaby's damages model shows damages cannot be calculated on a class wide basis.  (Mot. Decert. 2, 16–20.)  Specifically, CRST contends Huckaby's experts' opinions are contradicted by class members' testimony and impermissibly unreliable.  (*Id.*)  The Court previously found, consistent with Ninth Circuit precedent, that managing individualized damages calculations generally does not defeat class action treatment.  (Order re Certification 13 (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010).)  And the Court already rejected arguments similar to those CRST raises here when the Court denied CRST's motion for reconsideration.  (*See* Order Recons. Certification 4–6.)  Nevertheless, the Court again considers CRST's damages arguments.

  Statistical and representative evidence is permissible when "the evidence is reliable in proving or disproving the elements of the relevant cause of action," including damages.  *Ridgeway*, 946 F.3d at 1087 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016)).  Representative evidence may include employee testimony, video recordings, and expert studies. *Id.* (quoting *Tyson Foods*, 577 U.S. at 450).  Where "a representative sample is the only practicable means to collect and present relevant data to show damages, such representative evidence [is] properly admitted." *Id.* at 1088 (internal quotation marks omitted).

  CRST argues Huckaby's damages expert, Dr. Steve Viscelli, opines that the only timekeeping records for drivers—drivers logs—are unreliable and cannot be used

---

[7] The Court finds CRSTs argument regarding a modification defense unpersuasive, particularly in light of the lack of an unambiguous written agreement.  (*See* Mot. Decert. 15; Opp'n Mot. Decert. 14–15; Reply ISO Mot. Decert. 8–9, ECF No. 127.)

1    to estimate the amount of time Class Members spen[t] performing compensable work.

2    (Mot. Decert. 18).  According to CRST, this means that Huckaby cannot prove class

3    wide damages.  (*Id.* at 17–18.)  But Viscelli accounted for the reliability, or lack

4    thereof, of driver logs in forming his opinions based on his own substantial empirical

5    research in the industry.  (*See* Berenji DMSJ Decl. Ex. 61, ECF No. 119-3.)  Further,

6    Huckaby's experts' properly consider multiple sources of common evidence in

7    formulating their opinions, including CRST compensation data, GPS data, and

8    instructions to drivers for logging time.  *See Ridgeway*, 946 F.3d at 1088 (finding

9    expert methodology sound where based on payroll data, class questionnaires, DOT

10   inspections, driver logs, and databases).

11        CRST's argument that there is no way to prove damages for each class member

12   and that Huckaby's experts' assumptions are inconsistent with Class Member

13   individual testimony fares no better.  (Mot. Decert. 17–19.)  For instance, CRST

14   argues that "Dr. Viscelli concluded 22.5 minutes is a 'modest and reasonable' estimate

15   of how long it takes all class members to complete pre- and post-trip inspections. But

16   some class members testified that the amount of time spent on pre-trip inspections

17   varied between approximately 10 and 35 minutes."  (Mot. Decert. 18 (citation

18   omitted).)  The purported inconsistencies actually reveal correlation between Viscelli's

19   assumptions and representative Class Member testimony.  Viscelli's estimate falls

20   within the range of figures given in testimony and is not, as CRST contends,

21   inconsistent.  Ultimately, CRST's damages argument fails because "[d]rivers need not

22   prove that they all took the same time to complete required" tasks.  *Ridgeway*,

23   946 F.3d at 1088.  "All that is required is enough representative evidence to allow a

24   jury to draw a reasonable inference about the unpaid hours worked."  *Id.* (citing *Tyson*

25   at 455–59).  Huckaby offers that here.

26   **C.    Conclusion—Decertification**

27        For the reasons discussed above, the Court **DENIES** CRST's Motion for

28   Decertification.  (Mot. Decert., ECF No. 115.)

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** both motions for summary judgment, (ECF Nos. 108, 109), and **DENIES** CRST's motion for decertification, (ECF No. 115).    Additionally, the Court **DISMISSES** the UCL claim without prejudice and without leave to amend, for lack of equitable jurisdiction.

**IT IS SO ORDERED.**

April 1, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**