SHADIE L. BERENJI (SBN 235021)
berenji@employeejustice.law
**BERENJI LAW FIRM, APC**
707 Wilshire Blvd., Suite 4375
Los Angeles, California 90017
Phone: 310-855-3270
Fax: 310-855-3751

JOSHUA G. KONECKY (SBN 182897)
jkonecky@schneiderwallace.com
**SCHNEIDER WALLACE**
**COTTRELL KIM LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Phone: 415-421-7100
Fax: 415-421-7105

*Class Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KEITH HUCKABY, individually and on behalf of all other persons similarly situated, and on behalf of the general public,

Plaintiff,

v.

CRST EXPEDITED, INC., an Iowa corporation; CRST INTERNATIONAL, INC., an Iowa corporation; and DOES 1 through 30, inclusive,

Defendants.

Case No. 2:21-cv-07766-ODW-PD
*Assigned to Hon. Otis D. Wright, II*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: November 16, 2026
Time: 1:30 p.m.
Courtroom: 5D

*[Declarations of Keith Huckaby, Shadie L. Berenji, Joshua G. Konecky and Lindsey Marquez, and [Proposed] Order filed concurrently herewith]*

Complaint Filed: August 9, 2021

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION.................. **ERROR! BOOKMARK NOT DEFINED.**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 3

I. INTRODUCTION ........................................................................ 3

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 5

A. Plaintiff's Claims ........................................................................ 5

B. Motion Practice. ........................................................................ 6

C. Discovery and Investigation. ........................................................ 6

D. Mediations. ............................................................................... 6

E. Court-Approved Settlement in a Related Class Action. ............................ 7

III. THE SETTLEMENT ADMINISTRATOR'S REPORT ................................... 9

IV. KEY TERMS OF THE PROPOSED SETTLEMENT .................................... 10

V. ARGUMENT .............................................................................. 13

A. The Settlement Class Satisfies FRCP 23. ............................................ 13

B. The Court Should Grant Final Approval to the Class Action Settlement. 14

1. The standards for final approval ..................................................... 14

2. Class Counsel have zealously represented and continue to zealously represent the Class ........................................................................ 15

3. The Settlement was negotiated at arm's length through well-informed and non-collusive negotiations ...................................................... 16

4. The Settlement provides excellent relief to the Class ......................... 17

5. The Settlement treats Class Members equitably ................................ 19

C. The Court Should Approve the PAGA Portion of the Settlement ............ 20

VI. CONCLUSION .......................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Bolton v. U.S. Nursing Corp.*
(N.D. Cal. Oct. 18, 2013) 2013 WL 5700403 .......... 22

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) .......... 17

*Churchill Vill. L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .......... 14

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) .......... 14

*Echavez v. Abercrombie & Fitch Co., Inc.*,
Case No. CV 11–09754–GAF, 2017 WL 3669607
(C.D. Cal., March 23, 2017) .......... 23

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,
253 F. Supp. 3d 1074 (C.D. Cal. 2017) .......... 21, 23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 15

*Hopson v. Hanesbrands Inc.*
(N.D. Cal. Apr. 3, 2009) 2009 WL 928133 .......... 22

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......... 15

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) .......... 19

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) .......... 15

*Jack v. Hartford Fire Ins.* Co.
(S.D. Cal. Oct. 13, 2011) 2011 WL 4899942 .......... 22

*Jordan v. NCI Group., Inc.*,
Case No. EDCV 16-1701 JVS (SPx), 2018 WL 1409590
(C.D. Cal. Jan. 5, 2018) .......... 21, 23

*Lalli v. First Team Real Est.- Orange Cnty.*, No. 8:20-cv-00027-JWH (ADSx), 2022 WL 8207530 (C.D. Cal. Sept. 6, 2022) .......... 14, 17

*Leuzinger, et al., v. Gardner Trucking, Inc., et al.*, Case No. 21-cv-04952-YGR .......... 7

*Linney v Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .......... 15

*McKenzie v. Fed. Express Corp.* (C.D. Cal. Jan. 23, 2012) 2012 WL 12882124 .......... 22

*Montoya v. CRST Expedited, Inc.*, Case No. 16-cv-10095-PBS (D. Mass.) .......... 11

*Nat'l Rural Telecomm's Coop v. Directv, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 19

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016) .......... 21

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......... 14, 19

*Reed v. Thousand Oaks Toyota* (Cal. Super. Ct. Apr. 8, 2013) 2013 WL 8118716 .......... 22

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .......... 14

*Vargas v. Cent. Freight Lines, Inc.*, Case No.: 16-cv-00507-JLB, 2017 WL 4271893 (S.D. Cal., Sept. 25, 2017) .......... 21

**STATUTES**

29 U.S.C. §§ 201, et seq. .......... 8

Cal. Business & Professions Code §§ 17200-17204 .......... 8

Cal. Labor Code §§ 201-204, 223, 225.5, 226.2, 226, 226.7, 227.3, 500, 510, 512, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 2698-99, and 2802 .......... 8

Cal. Labor Code § 2699(e)(2) .......... 22

Cal. Labor Code § 2699(i) .......... 22

Cal. Labor Code § 2699(s)(2) .......... 21, 23

**RULES**

Fed. R. Civ. P. 23 .......... 4, 21

Fed. R. Civ. P. 23(e) .......... 4

Fed. R. Civ. P. 23(e)(2) .......... 4, 14, 17, 21

Fed. R. Civ. P. 23(e)(2)(D) .......... 21

Fed. R. Civ. P. 23(h) .......... 4

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on **November 16, 2026 at 1:30 p.m.,** or as soon thereafter as this matter may be heard before the Honorable Otis D. Wright, II, District Judge in Courtroom 5D of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, 90012, Plaintiff and Class Representative Keith Huckaby will move and hereby does move this Court for an order granting final approval of the proposed Class Action and Private Attorneys General Act "Settlement Agreement and Release of Claims" ("Settlement Agreement") between Plaintiff and Defendants CRST Expedited, Inc. and CRST International, Inc. (collectively, "CRST" or "Defendants").

This motion is made following the conference of counsel pursuant to Local Rule 7-3. Defendants have reviewed this motion and do not intend to oppose it.

This motion is based on the accompanying memorandum of points and authorities; the "Settlement Agreement and Release of Claims" attached as "**Exhibit A**" to the declaration of Shadie L. Berenji; the declarations of Class Counsel - Shadie L. Berenji and Joshua G. Konecky; the declaration of Keith Huckaby; the declarations of Lindsey Marquez of Kroll Settlement Administration; such oral argument as may be heard by the Court; and all other papers on file in this action.

**BERENJI LAW FIRM, APC**

Dated: October 19, 2026

/s/ *Shadie L. Berenji*
SHADIE L. BERENJI
Class Counsel

**SCHNEIDER WALLACE COTTRELL KIM LLP**

Dated: October 19, 2026

/s/ *Joshua G. Konecky*
JOSHUA G. KONECKY
Class Counsel

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Keith Huckaby seeks final approval of the Class Action and Private Attorneys General Act ("PAGA") "Settlement Agreement and Release of Claims" ("Settlement") that the Court preliminarily approved on June 4, 2026. *See* "Order Granting Motion for Preliminary Approval of Class Action and PAGA Settlement" ("Preliminary Approval Order"), ECF No. 186. The Settlement is for $14,500,000 and resolves California wage and hour claims of current and former employees of Defendants CRST Expedited, Inc. and CRST International, Inc. (collectively, "CRST" or "Defendants"). The Settlement Class is comprised of individuals who: (a) had a residential address in California; (b) performed work as a truck driver for CRST; and (c) were compensated by a piece rate from August 9, 2017 through April 10, 2023 ("CA Truck Drivers").[1] The underlying litigation and resulting settlement center around the vigorously disputed question of whether the terms of CRST's mileage-based piece-rate compensation plan were sufficient to compensate the CA Truck Drivers for their non-driving time during the Class Period. There were multiple other hotly contested issues as well.

Class Counsel worked diligently on the case for over five (5) years, with four-and-one-half (4 ½) years of active litigation, until the parties reached a settlement and executed a term sheet in December 2025, after their fourth mediation. The Parties drafted the long-form agreement and proposed class notices and presented the Settlement for preliminary approval by the Court on March 18, 2026. *See* Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement ("Motion for Preliminary Approval"), ECF No. 183. On June 4, 2026, the Court granted preliminary approval of the formalized and fully executed Settlement.

[1] Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the "Settlement Agreement and Release of Claims" attached to the Declaration of Shadie L. Berenji as "Exhibit A."

Thereafter, the Court-appointed Settlement Administrator (Kroll Settlement Administration) thoroughly vetted the class data and provided direct mail notice of the Settlement to approximately 4,412 Class and PAGA Group Members. The ordinary 60-day objection and opt-out period ended on October 5, 2026, and the extended deadline for Class Members whose notices were remailed is October 19, 2026. As of the date of this motion, zero (0) Class Members have objected to the Settlement and zero (0) Class Members have requested exclusion. The absence of objections and opt-outs to date supports final approval. Plaintiff will update the Court on the deadline for submitting reply briefs for this motion (*i.e.,* November 2, 2026) as to any objections, opt outs, or disputes, which may come in on or after October 19, 2026.

Based on the Class Member data and calculations, the Settlement Administrator estimates that the average <u>net</u> Individual Class Payment, <u>after</u> deductions for all the requested attorneys' fees and costs, will be $1,912 per Class Member. This recovery, which does <u>not</u> include the additional PAGA Payments, is higher than the $1,874 per person estimated at preliminary approval. The highest settlement payment is $26,438.50 and more than seventy-four (74) Class Members will recover settlement payments that exceed $15,000. It also is superior to comparable settlements in this area.

For the reasons discussed below, the proposed Settlement meets the standards for final approval under Federal Rule of Civil Procedure ("Rule") 23(e)(2) and applicable law. Additionally, as set forth below, the PAGA portion of the Settlement also should be approved because its terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes. Finally, Plaintiff is filing separate motions for approval of reasonable attorneys' fees and costs pursuant to Rule 23(h) and for a service award to the Class Representative, Keith Huckaby. Subject to any findings the Court may make or any other developments that may occur, Plaintiff requests that the Court grant final approval of the Settlement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Claims

On August 9, 2021, Plaintiff filed his Class Action Complaint for Damages ("Complaint") against Defendants in the Superior Court of the State of California, County of Los Angeles ("LASC"), Case No. 21STCV29128. (ECF No. 1-1.) On September 29, 2021, Defendants removed the case pursuant to 28 U.S.C. 1441(a) and 28 U.S.C. 1332(d)(2)(A) to the United States District Court for the Central District of California, Case No. 2:21-cv-07766-ODW-PD. (ECF No. 1.) On March 9, 2022, Plaintiff filed an amended Complaint asserting claims against Defendants for failure to: (1) pay minimum wages; (2) pay statutory/contractual wages; (3) reimburse business expenses; (4) provide accurate itemized wage statements; (5) timely pay wages; and (6) violation of California's Unfair Competition Law (UCL). (ECF No. 44.) The amended Complaint also alleged violations of the Fair Credit Reporting Act and California's Investigative Consumer Reporting Agencies Act; however, Plaintiff voluntarily dismissed those claims on March 14, 2022. (ECF No. 45.)

Plaintiff filed a separate PAGA action against Defendants on October 13, 2021, in LASC, Case No. 21STCV37657. *See* Declaration of Shadie L. Berenji filed concurrently herewith ("Berenji Decl."), ¶ 19. The claims pled in the operative PAGA complaint include the same allegations as in the instant action, and an allegation that Defendants failed to reimburse the cost of pre-employment medical examinations in violation of the California Labor Code. [2] On September 20, 2022, Defendants filed a motion to stay the PAGA action until completion of the instant action. The Court granted the motion and the PAGA action has remained stayed

[2] Pursuant to the Settlement Agreement, Plaintiff sought leave to file a Consolidated Complaint, which adds a PAGA claim mirroring the allegations pled in the operative complaint filed in the PAGA action on June 9, 2022. (ECF No. 180.) Plaintiff obtained leave from the Court and filed the Consolidated Complaint on March 17, 2026. (ECF Nos. 181 - 182.)

since. *Id.*

**B. Motion Practice.**

The Actions have involved almost four-and-one-half years of hard-fought litigation that included contested remand, class certification, reconsideration, and decertification motions, cross-motions for summary judgment, and months spent preparing trial-related documents and motions. Berenji Decl., ¶ 23. After Plaintiff moved for class certification, the Court issued an order granting in part and denying in part Plaintiff's motion by certifying three of Plaintiff's five claims. (ECF No. 60.) Following the completion of discovery, the Court denied CRST's motion to decertify the class; granted summary judgment in favor of CRST on Plaintiff's UCL claim; and denied the parties' cross-motions for summary judgment on the remaining claims. (ECF No. 136.)

**C. Discovery and Investigation.**

The parties have conducted significant discovery in this action. Class Counsel's vigorous discovery and investigation efforts have included, among other things: (a) meetings and conferences with Plaintiff and Class Members; (b) inspecting and analyzing more than 425,650 pages of documents and hundreds of gigabytes of electronic data produced by CRST; (c) analyzing the legal positions taken by Defendants; (d) retaining and working with subject matter and damages experts; (e) assembling and analyzing class-wide damages; (f) researching applicable and developing law with respect to the claims asserted in the Complaint and the potential defenses thereto; (g) answering and propounding extensive written discovery; (h) defending depositions of Plaintiff and Class Members; (i) preparing for and taking the depositions of Defendants' Rule 30(b)(6) representatives, fact, and expert witnesses; and, (j) conducting a site inspection and taking photographs and videos of CRST's trucks as well as truck fueling and scaling locations. Berenji Decl., ¶ 26.

**D. Mediations.**

This Settlement follows significant arms-length negotiations between the

parties, including four mediations with the following esteemed mediators: (1) Mariam Zadeh, Esq. on February 6, 2023; (2) the Hon. Ronald M. Sabraw (Ret.) on September 17, 2024; and (3) Scott A. Edelman, Esq. on December 2 and 15, 2025. Berenji Decl., ¶ 29. The parties reached an agreement on the principal terms of a Settlement at their final mediation. *Id.* at ¶ 30. This Settlement is the product of the good faith, arms-length negotiations that occurred with the use of experienced mediators, and after substantial investigation and motion practice. *Id.* at ¶¶ 30-32.

**E. Court-Approved Settlement in a Related Class Action.**

Throughout the majority of this action, there was a competing class action that was pending in the United States District Court for the Northern District of California ("Northern District") and shared substantially similar operative facts, causes of action, named defendants, and putative classes: *Leuzinger, et al., v. Gardner Trucking, Inc., et al.,* Case No. 21-cv-04952-YGR ("Leuzinger"). Berenji Decl., ¶¶ 38-39. Upon learning about *Leuzinger*, Plaintiff filed a notice of related cases in this Court, and a motion to intervene and/or transfer in *Leuzinger*. *Id.* at ¶ 39. CRST also filed a motion to dismiss in *Leuzinger* under the first-to-file rule because this action was filed before *Leuzinger*, and the claims and putative classes in both class actions were "nearly identical." *Id.* Significantly, Class Counsel negotiated an agreement with CRST during the settlement negotiations in *Leuzinger* to ensure that any release in the *Leuzinger* class action settlement agreement would not bar any individuals who might be class members in both cases from asserting the certified claims here. *Id.* at ¶ 40. Accordingly, the court-approved settlement and release in *Leuzinger* expressly states:

> The Released Class Claims do not include the certified claims of the Amended Piece-Rate Class in *Huckaby v. CRST Expedited, Inc.*, pending in the Central District of California under Case No. 2:21-cv-07766-ODW ("*Huckaby*"), as defined by the Court order granting class certification, in part, dated October 3, 2022 (ECF No. 60),

> and as amended in the order granting CRST's motion for reconsideration of that order, in part, dated April 10, 2023 (ECF No. 86).

*Id*.

Additionally, the *Leuzinger* settlement agreement expressly excludes "the PAGA claims related to the claims that have been certified on behalf of the Amended Piece-Rate Class in the *Huckaby* case…" *Id.*[3]

Notably, for overlapping Class Members bound by the *Leuzinger* settlement, that settlement released the non-certified claims and related PAGA claims covered by its terms. The settlement release in *Leuzinger* included the following language:

> [A]ll wage and hour claims, known or unknown, at law or inequity, which the Named Plaintiffs and the Settlement Classes have or may have, arising out of or related to the wage and hour claims (including all derivative claims) and the facts and allegations asserted in the Complaints, including the claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., Cal. Labor Code §§ 201-204, 223, 225.5, 226.2, 226, 226.7, 227.3, 500, 510, 512, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 2698-99, and 2802, IWC Wage Order No. 9, and claims under the Cal. Business & Professions Code §§ 17200-17204 based on the foregoing.

*Id.* at ¶ 41.

The class claims release period in *Leuzinger* was from August 10, 2017 through February 29, 2024, and the PAGA claims release period was from December 3, 2018 through February 29, 2024. *Id.* Accordingly, before the parties negotiated the settlement of the instant action, *Leuzinger* had released the non-certified claims

[3] In *Leuzinger,* the Northern District granted final approval of the settlement in the amount of $4,050,000 on the behalf of approximately 12,487 California resident truck driver employees. *See* Berenji Decl., ¶ 38. The average recovery per class member in *Leuzinger* was approximately $206.98. *Id.* In contrast, the average Class Member recovery here is projected to be approximately $1,912.77. *Id.* The result here is a testament to the extraordinary efforts and value achieved for the Class in the case at bar and the reasonableness of the Settlement now being presented for final approval.

covered by its terms for overlapping Class Members bound by that settlement, subject to its express exclusions for the certified claims here and *related PAGA* claims. *Id.*

## III. THE SETTLEMENT ADMINISTRATOR'S REPORT

The declaration submitted by the Settlement Administrator attests to the Settlement Notice being issued in accordance with the terms of the Court's Order Granting Motion for Preliminary Approval of Class Action and PAGA Settlement ("Preliminary Approval Order"). *See* Supplemental Declaration of Lindsey Marquez ("Marquez Decl.") of Kroll Settlement Administration LLC ("Kroll"), at ¶¶ 5-13, filed concurrently herein.

As described in the declaration, the Settlement Administrator mailed an individually tailored Postcard Class Notice to the 4,412 Class Members identified from Defendants' records. *Id.* at ¶¶ 8-10. The administrator tailored each notice to inform the Class Member of the number of his or her qualifying workweeks, the number of his or her qualifying PAGA Periods, and his or her estimated Individual Class and PAGA Payments. *Id.* at ¶ 9.

Before mailing the Notices, the Settlement Administrator thoroughly vetted several data files provided by Defendants to identify the individual Class and PAGA Group Members by name, last known mailing address, and dates of employment. *Id.* at ¶¶ 8-9. Throughout the vetting process, the administrator consulted with Class Counsel and Defense counsel to ensure accuracy and consistency. *Id.* at ¶ 8. Ultimately, the administrator identified 4,412 unique individuals and mailed the Court-approved notices to them on August 6, 2026. *Id.* at ¶¶ 9-10.

Before mailing the Notices, the Settlement Administrator also ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class data with any address changes received from the NCOA before sending the Notices. *Id.* at ¶ 9. Then, after the initial mailing, the administrator re-mailed any notices returned by the post office with a forwarding address. *Id.* at ¶ 11. For any notices returned without a forwarding address, the administrator ran the undeliverable

records through an advanced address search and re-mailed the Notices to the updated addresses found through this process. *Id.* at ¶ 12.

The Notice program also included a dedicated settlement website to host the Long-Form Class Notice and other important case documents as well as a toll-free telephone number for Class and PAGA Group Members to call for case inquiries. *Id.* at ¶¶ 5, 7.

The Settlement Administrator's declaration also provides further detail on the number of notices returned and remailed. *Id.* at ¶¶ 11-13. The administrator attests to the direct mail notice program having a "reach rate" of approximately 98.66%, which exceeds the 70%–95% range identified in the Federal Judicial Center's guidance as reasonably attainable for a notice campaign. *Id.* at ¶ 13 (citing FED. JUD. CTR., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 1, 3 (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf).

The deadline for objecting to the Settlement, disputing workweek data, or opting out of the Class Settlement was sixty (60) days from the mailing—*i.e.,* October 5, 2026. *See* Berenji Decl., Ex. A at § I.25; Marquez Decl. at ¶ 14. As required under § I.25 of the Settlement Agreement, the Administrator extended these deadlines an additional fourteen (14) days for Class Members whose notice was remailed—*i.e.,* until October 19, 2026. *Id.*

As of the date of the filing of this Motion, the Settlement Administrator have received zero (0) objections, zero (0) requests for exclusion, and zero (0) disputes. *Id.* at ¶ 15-16.

## IV. KEY TERMS OF THE PROPOSED SETTLEMENT

The proposed Settlement provides extensive monetary relief to Class Members and resolves the claims covered by the Settlement's releases. The key terms of the proposed Settlement include:

- Gross Settlement Amount: The GSA is $14,500,000. Berenji Decl., Ex. A at § I.20. This is the all-inclusive, maximum amount CRST is required to

pay to effectuate the Settlement. *Id.*

- No Reversion: All settlement funds will be paid out, and none will revert to Defendants. *Id.*
- Class Period: The Class Period is August 9, 2017 through the earlier of preliminary approval of the Settlement or March 1, 2026. *Id.* at § I.10.
- PAGA Release Period: The PAGA Release Period is August 9, 2020 until the earlier of preliminary approval of the Settlement or March 1, 2026. *Id.* at § I.30.
- Class: The settlement class is defined as all current and former employees that had a residential address in California and performed work as a truck driver for CRST Expedited, Inc. and were compensated by a piece rate from August 9, 2017 through April 10, 2023, excluding the participants in the settlement of *Montoya v. CRST Expedited, Inc.*, Case No. 16-cv-10095-PBS (D. Mass.). *Id.* at § I.5.
- PAGA Group Members: The PAGA Group Members are defined as all current and former employees that had a residential address in California and performed work as a truck driver for CRST who were compensated by a piece rate from August 9, 2020, through April 10, 2023, excluding the participants in the settlement of *Montoya v CRST Expedited, Inc.*, Case No. 16-cv-10095-PBS (D. Mass.). *Id.* at § I.29.
- Released Class Claims: The claims that Class Members participating in the Settlement will release are limited to the claims for relief asserted in the Consolidated Complaint and any claims which could have been pled based upon the facts alleged in the Consolidated Complaint. *Id.* at § I.37, and § VIII.1.
- Released PAGA Claims: The claims that PAGA Group Members participating in the Settlement will release are limited to the claims for civil penalties pursuant to PAGA, which Plaintiff pled or could have pled based on the facts alleged in the Consolidated Complaint, the PAGA complaints filed in the LASC action and/or the California Labor and Workforce Development Agency (LWDA) letters. *Id.* at § I.38, and § VIII.1.
- Net Settlement Amount: The NSA is the amount remaining from the GSA after payment of Class Counsel's attorneys' fees and costs, any service fee award granted to Plaintiff as Class Representative, all costs and expenses paid to the Settlement Administrator, and the PAGA Amount. *Id.* at § I.24.
- Direct Payments / No Claim Forms: Class Members who do not opt out will be automatically sent their pro-rata settlement payment. *Id.* at § VII.3.

- Distribution Formula: The Individual Class Payment to each Class Participant will be based on their pro-rata share of the NSA, in proportion to each Class Participant's Qualifying Class Workweeks. *Id.* at § VII.2.

- PAGA Payment: $725,000 will be allocated as the PAGA Amount, which shall be paid from the QSF. As this case was filed before the amendments to PAGA in 2024, 75% of the PAGA Amount (i.e., $543,750) will be paid to the LWDA. The remaining 25% of the PAGA Amount (i.e., $181,250) will be paid to the PAGA Group Members on a pro-rata basis, based on the number of Qualifying PAGA Pay Periods. *Id.* at § VII.1.

- Tax Allocation: The parties agree that one-third of the Individual Class Payments will be allocated to taxable wages, one-third of the Individual Class Payments will be allocated to interest and will not be subject to tax withholding, and one-third of the Individual Class Payments will be allocated to penalties and liquidated damages and will not be subject to tax withholding. The parties additionally agree that 100% of the PAGA Amounts will be allocated to interest, penalties, and liquidated damages, and will not be subject to tax withholding. *Id.* at § VII.10.

- Class Representative Service Award: The Settlement provides that Plaintiff may seek a service payment not to exceed $15,000.00, subject to Court approval. *Id.* at § I.40. Plaintiff will file a separate motion for approval of the service award based on his efforts throughout the case, including responding to discovery, sitting for deposition, providing information to counsel, and staying regularly apprised of the proceedings from before the initial Complaint in August 2021, among other things. The proposed award is approximately 0.1 percent of the GSA. Berenji Decl., ¶ 46(n).

- Attorneys' Fees: The Settlement provides that Plaintiff may make a motion for up to one-third (1/3) of the GSA in attorneys' fees, which would amount to an award of $4,833,333. Settlement at § VI.3. After years of hard-fought litigation, Class Counsel has a lodestar that significantly exceeds the requested attorneys' fees, with a "negative" multiplier of approximately 0.72. *See* Berenji Decl., ¶¶ 53, 71; Declaration of Joshua Konecky filed concurrently herewith ("Konecky Decl.") at ¶ 32. Plaintiff has filed a separate motion for attorneys' fees and costs under Rule 23(h) to substantiate the fees requested and the reasons why an award at one-third the Gross Settlement Amount is appropriate for the extensive work, demonstrated skill, and extraordinary results achieved in this case.

- Attorneys' Costs and Expenses: The Settlement provides that Plaintiff may make a motion for reimbursement of Counsel's costs and expenses. Settlement at § VI.3. Class Counsel have incurred approximately

$402,893.72 in costs and expenses, including costs for experts, deposition court reporters, mediator fees, ESI document storage and analytics, filing fees, and copying costs, among other costs. *See* Berenji Decl., ¶ 73, Ex. F; Konecky Decl., ¶ 45, Ex. CC. Plaintiff's separate motion for attorneys' fees and costs documents these expenditures.

- Settlement Administration Costs: The costs of settlement administration are included in the Gross Settlement Amount. Settlement at § I.20. In the Preliminary Approval Order, the Court appointed Kroll Settlement Administration ("Kroll") as the Settlement Administrator. (*See* Preliminary Approval Order, ECF No. 186 at 11:25.) As of the filing of this motion, Kroll reports that it has incurred $34,850.69 in administration fees and expenses thus far, and estimates it will incur an additional $42,670.36 to complete the administration of this Settlement. *See* Marquez Decl. at ¶ 20.
- Class and PAGA Notice: The notice campaign included individually tailored Postcard Class Notices mailed to the Class Members and a Long-Form Class Notice with additional information posted on the settlement website. Marquez Decl., ¶¶ 5-10 and Exhibits A and B thereto. As of the date of this motion, following the ordinary 60-day notice period and subject to the October 19, 2026 extended deadline for remailed notices, the Settlement Administrator has received zero (0) objections, zero (0) requests for exclusion, and zero (0) disputes. *Id.* at ¶¶ 14-17.

## V. ARGUMENT

### A. The Settlement Class Satisfies FRCP 23.

The Preliminary Approval Order provides that "for all the reasons the Court has already stated in its prior orders, the Court finds that it will likely be able to certify the [Class] for purposes of final approval of the settlement." (Preliminary Approval Order, ECF No. 186 at 6:12-14 (internal quotations omitted)). The Preliminary Approval Order notes that "the Class substantially mirrors the class that the Court previously certified." *Id.* at 6:10-11. By way of background, the previous Court orders pertaining to class certification were (1) the Order of October 3, 2022, originally certifying the Amended Piece-Rate Class, and (2) the Order of April 10, 2023, amending the class definition to provide an end date of the class period of April 10, 2023. (ECF No. 60, 18:8-13; ECF No. 86, 8:4-22.) For the reasons previously articulated by the Court, buttressed by the fairness and adequacy of the Settlement as

discussed herein, the Court should grant final certification of the proposed settlement Class.

### B. The Court Should Grant Final Approval to the Class Action Settlement

#### 1. <u>The standards for final approval</u>

As observed in the Preliminary Approval Order, courts may approve a class action settlement agreement only when the settlement is "fair, reasonable, and adequate." (Preliminary Approval Order, ECF No. 186 at 6:16-17 (quoting Fed. R. Civ. P. 23(e)(2)).) As the Court further explained: "To determine whether a settlement is 'fair, reasonable, and adequate,' courts consider the following factors: whether '(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate. . . ; and (D) the proposal treats class members equitably relative to each other." *Id.* at 6:16-17 (quoting Fed. R. Civ. P. 23(e)(2) and citing *Lalli v. First Team Real Est.- Orange Cnty.*, 2022 WL 8207530, at *3 (C.D. Cal. Sept. 6, 2022)). Additionally, case law from the Ninth Circuit over the past 40 years provides an overlapping set of factors that may be used as guidance to evaluate whether a settlement is fair, reasonable, and adequate. *See, e.g., Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

The law favors the compromise and settlement of class-action suits on fair and reasonable terms. *See, e.g., Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625. This "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned" is balanced by the need "to protect the unnamed members of the class from unjust or unfair settlement affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095,

1100 (9th Cir. 2008); *Linney v Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

Final approval of a class action settlement is appropriate when "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and [] the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) (internal citations omitted); *see also In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946-47 (9th Cir. 2011).

2. Class Counsel have zealously represented and continue to zealously represent the Class

In finding that Mr. Huckaby and Class Counsel adequately represented the Class through preliminary approval, the Court cited Class Counsel's work in securing the previous class certification orders, in defeating Defendants' motion for summary judgment and motion for decertification, and in participating in four mediations before three mediators to resolve the claims. *See* Preliminary Approval Order, ECF No. 186 at 7:11-23. These considerations continue to apply at final approval. Indeed, Class Counsel engaged in extensive and targeted discovery to gain a firm understanding of the work assignments of the class members, the job duties of the class members, the policies of CRST, and the competing evidence and arguments as to how CRST's policies affected the Class Members. *See* Berenji Decl., ¶ 26. Class Counsel thoroughly vetted and pursued the claims through motion practice and trial preparation, including identifying the trial witnesses and trial exhibits, among other pretrial filings, and briefing the motions in limine. *See* Berenji Decl., ¶ 53.

Since the Court's Preliminary Approval Order, Class Counsel has worked diligently with the Settlement Administrator and cooperatively with CRST's counsel to ensure implementation of the Settlement Notice. *See* Berenji Decl., ¶ 79. This has included working with the Settlement Administrator and CRST's counsel to ensure

that the class data is accurate and consistent with the parties' understandings during the settlement negotiations. *Id.* It also has included reviewing and providing comments to the final versions of the Class Notice and Settlement Website to ensure compliance with the Settlement Agreement and Preliminary Approval Order. *Id.* It has further included answering questions from the Settlement Administrator and Class Members promptly when they have occurred. *Id.*

Class Counsel is committed to continuing to monitor the Settlement and respond to inquiries from any Class Members who may have questions regarding the Settlement as well as their rights and options until administration of the Settlement is completed. *See* Berenji Decl., ¶ 80.

3. <u>The Settlement was negotiated at arm's length through well-informed and non-collusive negotiations</u>

At preliminary approval, the Court observed that "the record suggests zealous advocacy on both sides, as seen in multiple contested motions and four mediation sessions." (Preliminary Approval Order, ECF No. 186 at 8:12-13.) Class Counsel's declarations further attest to the Settlement being reached through informed, arms-length settlement negotiations by experienced attorneys. *See* Berenji Decl. at ¶ 28.

To begin with, the parties negotiated the settlement after engaging in extensive non-expert and expert discovery to inform the factual basis of the claims. This included the production and analysis of more than 425,650 pages of documents (including hundreds of gigabytes of electronic data), fourteen non-expert depositions, and substantive analysis from three experts, who were also deposed. *Id.* at ¶ 32. The parties also vetted the claims and defenses with motion practice before the Court on several occasions over the four-and-one-half years of the active litigation, including contested motions for: class certification; reconsideration of class certification; class decertification after the completion of discovery; and summary judgment by each party. *Id.* Counsel also invested significant time and

resources preparing for trial, including preparing the joint proposed pretrial conference order, proposed jury instructions, verdict forms, *voir dire* questions, memorandum of contentions of fact and law, statement of the case, deposition designations and objections thereto, trial exhibits and objections thereto, witness lists, and motions *in limine*. *Id.* This further armed the parties with a strong foundation for evaluating the legal merits and risks of the claims and defenses.

Over the course of the case, the parties and counsel participated in four separate mediation sessions, before three separate mediators. *Id.* at ¶ 29. Both sides zealously negotiated their positions and worked extensively in arms-length negotiations to resolve the hotly contested issues presented in this case. *Id.* at ¶ 31.

4. The Settlement provides excellent relief to the Class

The Court's Preliminary Approval Order observes that determining whether "relief provided for the class is adequate" looks to several factors, including "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class . . .; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and any agreement made in connection with the proposal." (Preliminary Approval Order, ECF No. 186 at 8:17-22 (citing Fed. R. Civ. P. 23(e)(2)(C); *Lalli*, 2022 WL 8207530, at *4) (internal quotations omitted).) As further noted at preliminary approval, the Court must also consider: "(1) whether counsel receive[d] a disproportionate distribution of the settlement; (2) whether the parties agreed to a clear sailing arrangement; and (3) whether the settlement includes a 'kicker' or 'reverter' clause." *Id.* at 8:25-9:2 (quoting *Lalli*, 2022 WL 8207530, at *3 and *Briseño v. Henderson*, 998 F.3d 1014, 1026-27 (9th Cir. 2021)) (internal quotations omitted).

The proposed Settlement comfortably meets these standards. First, the Settlement provides an extraordinary result for the Class, particularly given the hotly contested issues as to what is covered by the mileage-based piece rate, whether California law can apply extraterritorially to CRST's truck drivers who spend the

majority of their time out-of-state, and the measure of alleged damages based on the estimated time spent on the non-driving tasks, among other issues. *See* Berenji Decl., ¶¶ 33-35. Indeed, as the Court noted in the Preliminary Approval Order, the Settlement Class Members stand to gain substantially more than what the class members recovered in the similar *Leuzinger* Action. *See* Preliminary Approval Order, ECF No. 186 at 9:3-5.

Assuming an attorneys' fee award of $4,833,333 (approximately 72% of Class Counsel's lodestar and one-third the Gross Settlement Fund of $14,500,000), the Net Settlement Fund to be paid to 4,412 Class Members is estimated to be approximately $8,439,145. *See* Berenji Decl., ¶¶ 37, 53. This will result in an average settlement award of approximately $1,912 per Class Member, not including the additional PAGA Payments to the Class Members who also are PAGA Group Members. *See* Marquez Decl., ¶¶ 18-19. As shown at preliminary approval and in Class Counsel's declaration here, this measures very favorably against CRST's theoretical liability, even assuming Plaintiff were to prevail on all his liability and damages claims for the entire class. *See* Berenji Decl., ¶¶ 33-39; *see also,* Motion for Preliminary Approval, ECF No. 183 at 16:10-18:19. It exponentially exceeds the results in the *Leuzinger* Action and other comparable litigation. *See* Berenji Decl., ¶ 38. In sum, the record shows that the costs, risks, and delay of appeal favor settlement approval here. *See* Preliminary Approval Order, ECF No. 186 at 9:6-9.

As the Court also found at preliminary approval, the direct mailing campaign to distribute the monetary relief to the Class is an effective distribution method. *Id.* at 9:9-11. Further, the Settlement Administrator's declaration submitted in support of final approval attests to Kroll's qualifications and diligence in ensuring effective notice and distribution of funds. Marquez Decl., ¶¶ 3-13. As reported above, the Settlement Administrator states that the direct mail notice program has had a "reach rate" of approximately 98.66%. *Id.* at ¶ 13.

As to whether there are "subtle signs" that Class Counsel may have prioritized

their gains over those of the class members, the Court already has noted that "the Settlement does not contain a kicker or reverter clause, nor does it include a clear sailing arrangement." (Preliminary Approval Order, ECF No. 186 at 9:12-14.) Further, the Court also found at preliminary approval that awarding attorneys' fees at one-third of the Gross Settlement Amount is within the realm of potential approval. (*Id.* at 9:16-18.) Pursuant to Rule 23(h) and the Court's Preliminary Approval Order, Plaintiff has concurrently filed a separate motion for attorneys' fees and costs. As shown therein, a fee award of one-third the Gross Settlement Amount would result in a negative multiplier on Class Counsel's lodestar, given their extensive efforts throughout this lengthy litigation, and is warranted under both the lodestar-multiplier and percentage of the recovery approaches to evaluating motions for attorneys' fees.

A proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved. *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at * 2 (C.D. Cal. June 10, 2005) (citing *Officers for Justice*, 688 F.2d at 625); *Nat'l Rural Telecomm's Coop v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."). Further, courts have long recognized the inherent risks and "vagaries of litigation," and emphasized the comparative benefits of "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomm*, 221 F.R.D. at 526. In view of the considerations discussed above, the Gross Settlement Amount of $14,500,000—resulting in significant individual payments averaging $1,912 per Class Member—is a truly excellent result and warrants final approval.

5. The Settlement treats Class Members equitably

The Settlement has a pro-rata distribution formula that reflects the differential in the value of claims between Class and PAGA Group Members. *See* Berenji Decl., Ex. A at §VII.1-2. An individual's share in the Settlement goes up or down in relation

to how many workweeks and pay periods the individual worked for CRST during the Class and PAGA Periods. *Id.* This is a reasonable and equitable approach for distributing the settlement funds. *See* Preliminary Approval Order, ECF No. 186 at 10:2-4.

The Settlement Agreement provides that Mr. Huckaby, the Class Representative, may seek a Representative Service Award not to exceed $15,000. *See* Berenji Decl., Ex. A at §§ I.40; VI.1. At preliminary approval, the Court found that this contemplated award would be within the realm of potential approval. *See* ECF 186 at 10:4-7. In support of final approval and the service award, Mr. Huckaby has submitted a sworn declaration attesting to his efforts and commitment in working with Class Counsel for over five years to achieve the beneficial Settlement now before the Court.

Indeed, the time and effort Mr. Huckaby invested into this case was substantial. He produced documents, interrogatory responses, took time off from work to prepare for and appear at his deposition, prepared declarations in support of the motion for class certification, had numerous phone calls and meetings with Plaintiff's counsel throughout the case to stay apprised of the status and provide information, and assisted with 4 mediations and reviewed and executed the Settlement's term sheet and long-form agreement. *See* Declaration of Keith Huckaby filed concurrently herewith at ¶¶ 5-13. He not only initiated the case but continued his commitment to the Class throughout the nearly four-and-one-half year litigation and will continue to remain committed for what will be more than five years by the time the Settlement is implemented. *Id.* at ¶¶ 16-17. Plaintiff is filing a separate motion for approval of the service award to Mr. Huckaby.

For all these reasons, the proposed distribution formula "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

### C. The Court Should Approve the PAGA Portion of the Settlement

PAGA settlements are subject to court review and approval. *See* Labor Code §

2699, subd. (s)(2). Although there is no definitive standard for approval of a PAGA settlement, *see Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017), a number of District Courts in the Ninth Circuit have evaluated PAGA settlements by reference to whether "the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Jordan v. NCI Group., Inc.*, 2018 WL 1409590, *2 (C.D. Cal. Jan. 5, 2018) (citing cases). "Those purposes and policies include 'benefit[ting] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance.'" *Vargas v. Cent. Freight Lines, Inc.*, 2017 WL 4271893, at *3 (S.D. Cal., Sept. 25, 2017) (quoting *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1132-33 (N.D. Cal. 2016)).

While a PAGA representative action is distinct from a Rule 23 class action, *Flores*, 253 F. Supp. 3d at 1076, the reasons discussed above as to why the Settlement is fair, reasonable, and adequate under Rule 23 also show that the PAGA claims were negotiated at arms-length and with a sufficient information base, and that Class Counsel's exposure and risk analyses were reasonable.

It also bears noting that Class Counsel conducted a specific exposure and risk analysis for the PAGA claims. *See* Berenji Decl., ¶ 34. This analysis considered, among other things, arguments concerning the "stacking" of penalties that may be argued by Defendant, arguments concerning whether to apply the $100 or $200 civil penalty, and whether the Court might exercise its discretion to reduce penalties based on a determination that "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory" under Labor Code section 2699, subdivision (e)(2). *Id.*

The parties' agreement to allocate $725,000—five percent (5%) of the Gross Settlement Amount—to PAGA is also reasonable. Indeed, courts have approved amounts for PAGA penalties within the range of zero to two percent of a settlement amount. *See Hopson v. Hanesbrands Inc.*, 2009 WL 928133, at *1, *9 (N.D. Cal.,

Apr. 3, 2009) (approving a PAGA payment of $1,500 from $408,420 Maximum Settlement Amount—0.37%); *Jack v. Hartford Fire Ins.* Co., 2011 WL 4899942, at *1, *6 (S.D. Cal., Oct. 13, 2011) (approving a PAGA payment of $3,000 from $1,200,000 settlement fund—0.25%); *Reed v. Thousand Oaks Toyota*, 2013 WL 8118716 (Cal. Super. Ct. Apr. 8, 2013) (1.3%); *Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403, *2 (N.D. Cal. Oct. 18, 2013) (approving $15,000 PAGA allocation from total settlement of $1,700,000—0.88%); *McKenzie v. Fed. Express Corp.*, 2012 WL 12882124, at *5 (C.D. Cal. Jan. 23, 2012) ("This allocation represents one percent of the $8.25 million maximum settlement amount, and Plaintiff correctly notes that this is within the zero to two percent range for PAGA claims approved by courts.") (collecting cases).

The Settlement is also divided in accordance with the statute's distribution formula that is applicable to the PAGA claims in this case, which were initiated by Plaintiff's initial notice letter to the LWDA on August 9, 2021. Under the version of the PAGA that applies to PAGA claims initiated before June 19, 2024, 75% of the civil penalties recovered are paid to the LWDA and the remaining 25% are paid to the aggrieved employees. *See* Labor Code § 2699, subd. (i), Stats.2016, c. 31 (S.B.836), § 189, eff. June 27, 2016.[4] The parties' compliance with applicable law as to the distribution of PAGA civil penalties is another factor in favor of granting approval of the PAGA Settlement. *Flores,* 253 F.Supp.3d at 1077; *Echavez v. Abercrombie & Fitch Co., Inc.,* Case No. CV 11–09754–GAF, 2017 WL 3669607, at *4 (C.D. Cal., March 23, 2017).

Finally, on March 17, 2026, Plaintiff also provided notice of the Settlement to

[4] After Plaintiff brought the PAGA claims, the Legislature amended the statute such that 65% of the civil penalties recovered will be distributed to the LWDA and 35% to the aggrieved employees. Cal. Labor Code § 2699(m). However, this new distribution formula applies to cases filed on or after June 19, 2024. *See* 2024 Cal. Legis. Serv. Ch. 44 (A.B. 2288).

the California Labor and Workforce Development Agency, pursuant to California Labor Code section 2699, subdivision (s)(2). *See* "Declaration of Shadie L. Berenji in Support of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement" ("Berenji Preliminary Approval Decl."), ECF No. 183-1, Ex. G. To date, the LWDA has not submitted a comment or objection to the Settlement. Berenji Decl., ¶ 78. This also weighs in favor of approval. *See Jordan*, 2018 WL 1409590, at *3; *Echavez v. Abercrombie & Fitch Co., Inc.,* Case No. CV 11–09754–GAF, 2017 WL 3669607, at *3 (C.D. Cal., March 23, 2017) ("[T]he Court finds persuasive that LWDA was invited to file a response to the proposed settlement agreement in this case and elected not to file any objections or opposition thereto. The Court infers LWDA's non-response is tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount.").

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the accompanying Proposed Order granting Plaintiff's Motion for Final Approval of Class Action and PAGA Settlement.

**BERENJI LAW FIRM, APC**

Dated: October 19, 2026

/s/ *Shadie L. Berenji*
SHADIE L. BERENJI
Class Counsel

**SCHNEIDER WALLACE COTTRELL KIM LLP**

Dated: October 19, 2026

*/s/ Joshua G. Konecky*
JOSHUA G. KONECKY
Class Counsel

## CERTIFICATE OF COMPLIANCE

(L.R. 11-6.2)

The undersigned, counsel of record for Plaintiff Keith Huckaby and the Amended Piece-Rate Class, certifies that this brief contains 6,892 words, which complies with the word limit of L.R. 11-6.1.

DATE: October 19, 2026

**SCHNEIDER WALLACE COTTRELL KIM LLP**

By: */s/ Joshua G. Konecky*
JOSHUA G. KONECKY
Class Counsel