Shadie L. Berenji (SBN 235021)
**BERENJI LAW FIRM, APC**
707 Wilshire Blvd., Suite 4375
Los Angeles, California 90017
Phone: 310-855-3270
Fax: 310-855-3751
berenji@employeejustice.law

Joshua G. Konecky (SBN 182897)
**SCHNEIDER WALLACE COTTRELL KIM LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Phone: 415-421-7100
Fax: 415-421-7105
jkonecky@schneiderwallace.com

*Class Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KEITH HUCKABY, individually and on behalf of all other persons similarly situated, and on behalf of the general public,

Plaintiff,

v.

CRST EXPEDITED, INC., an Iowa corporation; CRST INTERNATIONAL, INC., an Iowa corporation; and DOES 1 through 30, inclusive,

Defendants.

Case No. 2:21-cv-07766-ODW-PD
*Assigned to Hon. Otis D. Wright, II*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF REASONABLE ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Date:** November 16, 2026
**Time:** 1:30 p.m.
**Location:**
First Street U.S. Courthouse
350 W. 1st Street, Courtroom 5D, 8th Floor, Los Angeles, CA 90012

Complaint Filed: August 9, 2021

# NOTICE OF MOTION AND MOTION

**TO ALL CLASS MEMBERS, PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on **November 16, 2026, at 1:30 p.m.**, or as soon thereafter as this matter may be heard before the Honorable Otis D. Wright, II, District Judge in Courtroom 5D of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, 90012, Plaintiff and Class Representative Keith Huckaby will move and hereby does move this Court for an Order awarding reasonable attorneys' fees and costs to be paid out of the non-reversionary, common settlement fund in this matter.

Plaintiff requests approval of attorneys' fees in the amount of $4,833,333, which is one-third (1/3) of the Gross Settlement Amount of $14,500,000, and approximately seventy-two percent (72%) of Class Counsel's lodestar. From the initial client intake and investigation in May 2020, through the middle of 2026, Class Counsel have invested approximately 7,400 hours into this matter (after deductions for billing judgment) and have incurred attorneys' fees of approximately $6,700,000. This lodestar does not include the time spent preparing this fee motion, the motion for final approval of the settlement, the motion for a service award to the class representative, and other work that will occur through and after final approval to ensure effective implementation of the settlement. As shown herein, the excellent benefit Class Counsel achieved for the Class, their skill and dedication, the contingent risks associated with the claims, the lack of objection or requests for exclusion from the Class, and Class Counsel's lodestar, among other things, makes the fee request reasonable under both the percentage-of-the-fund approach and lodestar-multiplier cross-check for awarding attorneys' fees in the Ninth Circuit.

Pursuant to the settlement and class notice, Plaintiff also seeks reimbursement of Class Counsel's documented out-of-pocket costs in the amount of $402,893.72, which were reasonably incurred in the diligent prosecution of this action and

recoverable under applicable law. This amount is below the estimated $410,000 amount that was included in the settlement agreement and class notice.

The motion is made following the conference of counsel pursuant to Local Rule 7-3.

This motion is based on the accompanying memorandum of points and authorities; the declarations of Class Counsel, Shadie Berenji ("Berenji Declaration") and Joshua G. Konecky ("Konecky Declaration"), in support of the motion, including the Settlement Agreement and Release of Claims (**Exhibit A** to the Berenji Declaration); spreadsheets in Microsoft Excel format showing Class Counsel's billing detail, rates, and corresponding lodestars (**Exhibit B** to the Berenji Declaration and **Exhibits B1 & B2** to the Konecky Declaration), spreadsheets in Microsoft Excel format showing Class Counsel's ledger of out-of-pocket costs (**Exhibit F** to the Berenji Declaration and **Exhibit CC** to the Konecky Declaration), further documentation of Class Counsel's qualifications, efforts, diligence, and reasonableness of their rates for purposes of the lodestar-cross check; such oral argument as may be heard by the Court; and all other papers on file in this action.

**BERENJI LAW FIRM, APC**

Dated: October 19, 2026

/s/ *Shadie L. Berenji*
SHADIE L. BERENJI
Class Counsel

**SCHNEIDER WALLACE COTTRELL KIM LLP**

Dated: October 19, 2026

/s/ *Joshua G. Konecky*
JOSHUA G. KONECKY
Class Counsel

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 3

III. CLASS COUNSEL'S BILLING RECORDS ........ 3

IV. ARGUMENT ........ 6

A. Entitlement to reasonable attorneys' fees and costs ........ 6

B. The methods for evaluating attorneys' fees ........ 6

C. Recovery of the fees requested by Plaintiff is reasonable and appropriate under the percentage-of-the-fund method ........ 7

1. The purpose of the percentage-of-the-fund method ........ 7

2. The Ninth Circuit permits an upward adjustment to the 25 percent benchmark in situations such as the one at bar ........ 8

3. A fee award at one-third the GSA is fair and appropriate given the superior results Class Counsel achieved. ........ 9

4. A fee award at one-third of the GSA also is fair and appropriate because it will result in a negative multiplier on Class Counsel's lodestar. ........ 11

5. A fee award at one-third the GSA also is fair and appropriate given Class Counsel's efforts and dedication. ........ 12

6. A fee award at one-third of the GSA also is fair and appropriate given the demonstrated skill and experience Class Counsel brought to bear on the case ........ 13

7. A fee award at one-third of the GSA also is fair and appropriate given the contingent nature of the fee and risks of nonpayment ........ 14

8. The lack of objection from the Class further supports the award of attorneys' fees at one-third of the GSA ........ 15

D. The "lodestar-multiplier" cross-check further supports the reasonableness of Plaintiff's fee request ........ 16

1. The lodestar-multiplier approach provides a useful perspective on the percentage award. ........ 16

2. Class Counsel's billing rates are comfortably within the market range, as shown by numerous previous decisions affirming their rates and recent rate surveys ........ 17

3. Class Counsel's sworn declarations, including their detailed billing records, show that their time was reasonably spent to achieve superior results ........ 20

4. An award of attorneys' fees at one-third the GSA will result in a "negative" multiplier on Class Counsel's lodestar ........ 22

E. Plaintiff's costs are documented and reasonable ........ 22

V. CONCLUSION ........ 23

# TABLE OF AUTHORITIES

## CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*,
2017 U.S. Dist. LEXIS 235743 (C.D. Cal. Dec. 4, 2017) .....11

*Armstrong v. Davis*,
318 F.3d 965 (9th Cir. 2003).....16

*Attia v. Neiman Marcus Grp.*,
2019 U.S. Dist. LEXIS 240240 (C.D. Cal. Feb. 25, 2019).....9

*Barrios v. Cal. Interscholastic Fed'n*,
277 F.3d 1128 (9th Cir. 2002).....16

*Blackwell v. Foley*,
724 F. Supp. 2d 1068 (N.D. Cal. 2010) .....21

*Blum v. Stenson*
465 U.S. 886 (1984) .....17

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980) .....7

*C.B. v. Moreno Valley Unified Sch. Dist.*,
2025 WL 3040876 (C.D. Cal. Oct. 3, 2025).....17

*Camacho v. Bridgeport Fin., Inc.*
523 F.3d 973 (9th Cir. 2008).....17

*Chalmers v. City of L.A.*
796 F.2d 1205 (9th Cir. 1986), amended by 808 F.2d 1373 (9th Cir. 1987).....22

*Cole v. CRST, Inc.*,
2017 WL 1234215 (C.D. Cal. Mar. 30, 2017) .....14

*Curran v. City of Oakland,*
2025 WL 3485360 (N.D. Cal. Dec. 4, 2025).....21

*Dang v. Cross*
422 F.3d 800 (9th Cir. 2005).....17

*Erami v. JP Morgan Chase Bank*,
2018 U.S. Dist. LEXIS 245073 (C.D. Cal. Dec. 3, 2018) ....................................9

*Grant v. T-Mobile USA, Inc.*,
No. CV 21-2268-GW-JEMX, 2023 WL 7308311 (C.D. Cal. Oct. 3, 2023) .........22

*Griffin v. City of Los Angeles*,
2026 WL 1747212 (C.D. Cal. June 11, 2026) ...............................................18, 19

*Gutierrez v. Wells Fargo Bank, N.A.*,
No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ................22

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..........................................................................................16, 21

*Heredia v. Sunrise Senior Living, LLC, et al.*,
2024 WL 5416919 (C.D. Cal. Dec. 3, 2024) .........................................................8

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)...............................................................6, 7, 8, 16

*In re Loandepot Data Breach Litig.*,
2025 WL 2633063 (C.D. Cal. Aug. 25, 2025)......................................................18

*In re Media Vision Tech. Sec. Litig.*
913 F.Supp. 1362 (N.D. Cal. 1996) ....................................................................22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)................................................................................2

*In re Quintus Sec. Litig.*,
148 F. Supp. 2d 967 (N.D. Cal. 2001) ..................................................................8

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ................................................................................21

*In re Toys "R" Us-Del., Inc. – Fair and Accurate Credit Transaction Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994).................................................................................7

*Jankey v. Poop Deck*,
537 F.3d 1122 (9th Cir. 2008)....................16

*Julio v. Anthony, Inc.*,
2015 U.S. Dist. LEXIS 200368 (C.D. Cal. June 24, 2015) ....................6, 8, 9, 11

*Knight v. Red Door Salons, Inc.*,
2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ....................9

*Knisley v. Network Assocs*.
312 F.3d 1123 (9th Cir. 2002)....................6

*LA Int'l Corp. v. Prestige Brands Holdings, Inc.*,
168 F.4th 608 (9th Cir. 2026)....................19

*Laffitte v. Robert Half International Inc.*,
1 Cal. 5th 480 (2016)....................8

*Leuzinger, et al., v. Gardner Trucking, Inc., et al.*,
Case No. 21-cv-04952-YGR....................10

*Monterrubio v. Best Buy Stores, L.P.*,
291 F.R.D. 443 (E.D. Cal. 2013) ....................8

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989)....................7

*Pritchett v. Slauson Gas Station, LLC*,
2022 WL 319989 (C.D. Cal. Jan. 10, 2022) ....................18

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*
779 F.3d 934 (9th Cir. 2015)....................6, 7

*Romero v. Producers Dairy Foods, Inc.*,
2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 14, 2007)....................9

*Rutti v. Lojack Corp*.
2012 U.S. Dist. LEXIS 107677 (C.D. Cal. 2012)....................22

*Schiller v. David's Bridal, Inc.*,
No. 1:10–cv–00616–AWI–SKO, 2012 WL 2117001
(E.D. Cal., June 11, 2012) ....................21

*Sevilla v. Aaron's Inc.*,
2020 WL 10573205 (C.D. Cal., May 15, 2020) .......... 8

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) .......... 8

*Stanger v. China Elec. Motor, Inc.*,
812 F.3d 734 (9th Cir. 2016) .......... 16

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003) .......... 7, 8, 22

*Torres v. Flying Food Group, LLC*,
No. 2:23-CV-9980-SB-MRW, 2025 WL 2995082 (C.D. Cal., Feb. 7, 2025) .......... 22

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990) .......... 17

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .......... 8

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002), *cert. denied*, 537 U.S. 1018 (2002) .......... 6, 8, 16

*Wilbur v. City of Mount Vernon*
2014 WL 11961980 (W.D. Wash. 2014) .......... 17

**RULES**

Fed. R. Civ. P. 23(h) .......... 6

Fed. R. Civ. P. 54(d)(1) .......... 22

Fed. R. Civ. P. 54(d)(2)(A) .......... 22

**OTHER AUTHORITIES**

Manual for Complex Litigation § 14:6 .......... 9

Newberg on Class Actions §11:24 .......... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff and Class Representative, Keith Huckaby, respectfully submits this motion for reasonable attorneys' fees and costs to compensate Class Counsel for the work they undertook on a contingent basis since May 2020 to achieve the very impressive settlement in this hard-fought class action case. The case presented the hotly disputed question of whether the mileage-based compensation formula used by Defendant CRST Expedited, Inc. ("CRST") adequately accounted for the time its long-haul truck drivers routinely spent on non-driving activities. After extensive investigation, discovery, fact-witness depositions, expert reports and depositions, motion practice, trial preparation, and four mediations, Class Counsel secured a $14,500,000 settlement that the Court preliminarily approved on June 4, 2026.[1] ("Order Granting Motion for Preliminary Approval of Class Action and PAGA Settlement" ("Preliminary Approval Order"), ECF No. 186.) The settlement is exponentially superior in value to other comparable settlements.

The excellent results did not come easy. After making deductions for billing judgment, Class Counsel invested nearly 7,400 hours into defending the rights of their clients for over five (5) years (four-and-one-half years of active litigation), despite significant uncertainty in the outcome at every stage. The risks ranged from whether CRST's compensation structure violated California law, to whether California law applied extraterritorially to the California-based drivers who spent approximately eighty-five percent (85%) of their time outside California, to competing expert testimony on the measure of damages, among other significant disputes. Throughout the case, CRST presented a skillful and fierce defense. At various stages, Class

[1] Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the "Settlement Agreement and Release of Claims" attached to the Declaration of Shadie L. Berenji as "Exhibit A."

Counsel also had the opportunity to settle for less, but instead chose to forge ahead for superior results despite the significant contingent risk.

The Class Action and Private Attorneys General Act ("PAGA") "Settlement Agreement and Release of Claims" ("Settlement") now before the Court provides that Class Counsel may petition for a fee award of $4,833,333, which is one-third (1/3) of the Gross Settlement Amount ("GSA") of $14,500,000. At preliminary approval, the Court found this fee to be within the realm of potential approval. *See* Preliminary Approval Order, ECF No. 186 at 9:16-19 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000)). As discussed below, the evidence and applicable law demonstrate that awarding fees in this amount would be fair and reasonable.

After deductions for billing judgment, Class Counsel's lodestar is approximately $6,700,000, which means that a fee award of one-third the GSA would result in a "negative multiplier" of approximately 0.72. Class Counsel have submitted detailed billing records to demonstrate the reasonableness of their hours. Class Counsel's declarations also provide detail to show that their rates are within the market range for similar cases in the Los Angeles legal market, and that their billing practices and allocation of work were reasonable in light of the claims and defenses presented. Further, the excellent benefit achieved for the class, the skill and dedication of Class Counsel, the contingent risks associated with the claims, and the lack of objections or opt-outs from the Class, among other things, warrants an upward adjustment to the twenty-five percent benchmark under Ninth Circuit law, as further supported by the lodestar-multiplier cross-check. Thus, the fee request is reasonable under both the percentage-of-the-fund and lodestar-multiplier approaches.

Plaintiff also seeks reimbursement of Class Counsel's documented out-of-pocket costs in the amount of $402,893.72. As documented in Class Counsel's declarations, these costs were reasonably incurred in the diligent prosecution of this action. This request is below the capped amount of $410,000 in the Settlement.

Further, Class Members have not objected to these costs either.

For these reasons, and as further discussed below, Plaintiff respectfully requests that the Court grant the Motion for Reasonable Attorneys' Fees and Costs.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The concurrently filed Motion for Final Approval presents the factual and procedural background of this matter. In summary, the Actions involved extensive fact discovery; document review and data analysis; fact-witness depositions; a contested motion to remand; a contested motion for class certification; a contested motion for reconsideration; interviews of scores of class members; a contested motion for class decertification, cross-motions for summary judgment, expert reports, expert depositions, months spent preparing trial-related documents and motions, and four separate mediation sessions over the course of approximately four-and-one-half years of active litigation (plus pre-litigation investigations and post-settlement work). Berenji Decl., ¶¶ 23-32.

## III. CLASS COUNSEL'S BILLING RECORDS

Exhibit B to the Berenji Declaration, and Exhibits B1 and B2 to the Declaration of Joshua G. Konecky ("Konecky Declaration"), contain spreadsheets in Microsoft Excel format showing, in chronological order, the billed tasks performed by their respective firms in this case. Each billing entry lists the person who performed the task, the time spent on the task (in six (6) minute increments), and a description of the specific task performed. *Id.* Counsel's declarations further provide the hourly rates, years of experience, and qualifications of the billers. *See* Berenji Decl., ¶¶ 2-12, 63-64; Konecky Decl., ¶¶ 6-25.

Class Counsel exported the billing detail directly from their firms' billing software. *See* Berenji Decl., ¶ 66; Konecky Decl., ¶ 27. The lawyers and staff entering time into this software were instructed to record their time in tenth-of-an-

hour increments, as contemporaneously as possible with the expenditure of time. *See* Berenji Decl., ¶ 66; Konecky Decl., ¶ 26.

A summary of Class Counsel's respective firm lodestars, after deductions for billing judgment is as follows:

**BERENJI LAW FIRM, APC**

**(May 21, 2020 through August 26, 2026)**

| Biller | Bar Date | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Shadie L. Berenji | 2004 | $1,200 | 1,703.00 | $2,043,600.00 |
| David C. Hopper | 2015 | $1,000 | 411.40 | $411,400.00 |
| Shawhin M. Berenji | 2023 | $700 | 817 | $571,900.00 |
| **TOTAL** | | | 2,931.40 | **$3,026,900.00** |

*See* Berenji Decl., ¶¶ 2, 63-65, Ex. B.

**SCHNEIDER WALLACE COTTRELL KIM LLP**

**(November 21, 2022 through March 25, 2026)**

| Biller | Bar Date | Rate | Hours | Lodestar |
|---|---|---|---|---|
| ***Partners*** | | | | |
| Joshua Konecky | 1996 | $1,350 | 680.30 | $918,405 |
| Nathan Piller | 2014 | $1,200 | 764 | $916,800 |
| | | | | |
| ***Associates / Staff Attorneys*** | | | | |
| Ryan Bonner | 2015 | $950 | 44.3 | $42,085 |
| Frank White | 2016 | $900 | 44.4 | $39,960 |
| Justin Proctor | 2017 | $825 | 122.2 | $100,815 |
| Sarah McCracken | 2016 | $775 | 20 | $15,500 |
| Amanda Marshall | 2023 | $750 | 14.2 | $10,650 |
| Brendan Kelly | 1995 | $650 | 185.9 | $120,835 |

| | | | | |
|---|---|---|---|---|
| Christopher Craig | 1994 | $650 | 769 | $499,850 |
| James Dion | 2017 | $650 | 529.1 | $343,915 |
| James Maher | 2006 | $650 | 379.3 | $246,545 |
| Jason Hoggard | 2003 | $650 | 150.7 | $97,955 |
| | | | | |
| ***Paralegals / Law Clerks / Outreach Specialists*** | | | | |
| Kelle Wintner | N/A | $550 | 67.4 | $37,070 |
| Lourdes Castro | N/A | $500 | 11 | $5,500 |
| Jolanda Greene | N/A | $400 | 209.3 | $83,720 |
| Katherine Kussler | N/A | $385 | 29.7 | $11,434.50 |
| Martha Lara | N/A | $450 | 10.9 | $4,905 |
| Pranav Garigipati | N/A | $440 | 43.4 | $19,096 |
| Talal Al-Hindi | N/A | $400 | 113.3 | $45,320 |
| Thomas Barnett | N/A | $400 | 221.1 | $88,440 |
| Michael Garcia | N/A | $360 | 29.9 | $10,764 |
| | | | | |
| **TOTAL** | | | **4,439.40** | **$3,659,564.50** |

*See* Konecky Decl., ¶ 33, Ex. B.

**TOTAL**

| Biller | Hours | Lodestar |
|---|---|---|
| Berenji Law Firm, APC ("BLF") | 2,931.40 | $3,026,900.00 |
| Schneider Wallace Cottrell Kim LLP ("SWCK") | 4,439.40 | $3,659,564.50 |
| **TOTAL** | **7,370.80** | **$6,686,464.50** |
| **(Blended rate = $907.16)** | | |

The hours and lodestar figures reported above come after Class Counsel made deductions for billing judgment. *See* Berenji Decl., ¶¶ 66, 72; Konecky Decl., ¶¶ 28-29, 34. They also do not include time spent on the instant motions for final approval, attorneys' fees and costs, and a service award, or work that will be performed during the settlement implementation process. *See* Berenji Decl., ¶ 72; Konecky Decl., ¶ 30.

## IV. ARGUMENT

### A. Entitlement to reasonable attorneys' fees and costs

Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011) ("*In re Bluetooth*"). At the same time, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. If a negotiated class action settlement includes an award of attorneys' fees, that fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs*., 312 F.3d 1123, 1126 (9th Cir. 2002); *Julio v. Anthony, Inc.*, 2015 WL 13919364, *5 (C.D. Cal., June 24, 2015).

### B. The methods for evaluating attorneys' fees

Where a settlement produces a common fund for the benefit of the entire class, there are two methods of calculating attorneys' fees: (1) the percentage-of-the-fund method; or (2) the lodestar/multiplier method. *In re Bluetooth*, 654 F.3d at 941. The percentage-of-the-fund method permits the court to award class counsel a percentage of the common fund recovered for the class. *Resnick,* 779 F.3d at 942. Under the lodestar method, courts multiply the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *In re Bluetooth,* 654 F.3d at 941.

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002), *cert. denied*, 537 U.S. 1018 (2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1295–96 (9th Cir. 1994)); *see also Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015); *Staton v. Boeing Co.,* 327 F.3d 938, 972 (9th Cir. 2003).

**C. Recovery of the fees requested by Plaintiff is reasonable and appropriate under the percentage-of-the-fund method**

1. <u>The purpose of the percentage-of-the-fund method</u>

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fees from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749 (1980). "Because the benefit to the class is easily quantified in common-fund settlements" the benefit-of-the-recovery method avoids the "often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. The percentage-of-the-fund approach also "ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton*, 327 F.3d at 967. Class Members who benefit from a common fund recovery accept their fair *pro-rata* responsibility to contribute towards the time and expenses the attorneys invested to create the fund in the first place. *Id.*

The common-fund doctrine applies if "(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (citing *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985)). "These criteria are easily met where, as here, 'each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf.'" *Id*. (quoting *Boeing Co.*, 444

U.S. at 479).

2. The Ninth Circuit permits an upward adjustment to the 25 percent benchmark in situations such as the one at bar

In the Ninth Circuit, the benchmark for a reasonable fee award in common-fund cases is 25% of the recovery obtained. *See In re Bluetooth*, 654 F.3d at 942; *Staton,* 327 F.3d at 973. The Court may adjust the fee award upward or downward from this benchmark based on the record. *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

As Chief Judge Dolly M. Gee held in support of an award of one-third of the settlement amount in a wage-and-hour class action, it is "not uncommon for courts to award one-third of the gross settlement fund as attorneys' fees where the circumstances warrant it." *Sevilla v. Aaron's Inc.,* 2020 WL 10573205, *2 (C.D. Cal., May 15, 2020) (citing *Laffitte v. Robert Half International Inc.*, 1 Cal. 5th 480, 506 (2016) and *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995), and awarding fees at one-third the overall settlement, resulting in a lodestar-multiplier of 1.82); *Van Vranken,* 901 F.Supp. at 297 ("Class Counsel have also cited 73 district court opinions in which fees in the range of 30-50 percent of the common fund were awarded.")

In assessing the reasonableness of an adjustment to the benchmark, Class Counsel's lodestar may "provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050. Other factors a court may consider include: (1) the results achieved and benefit obtained for the class; (2) the risks of non-payment assumed by counsel; (3) class counsel's skill, effort and quality of work; (4) the complexity of the issues; (5) the contingent nature of the fee and the financial burden carried by class counsel; and (6) the reaction of the class. *Vizcaino*, 290 F.3d at 1048-1050; *Julio,* 2015 WL 13919364, at *5 (citing *In re Quintus Sec.*

*Litig.*, 148 F. Supp. 2d 967, 973-74 (N.D. Cal. 2001)).

Applying these factors here, an attorneys' fee award of one-third the GSA here is comfortably within the range of class action settlements approved by the District Courts in the Ninth Circuit. *See, e.g., Heredia v. Sunrise Senior Living, LLC, et al.*, 2024 WL 5416919, at *7 (C.D. Cal. Dec. 3, 2024) (granting fees of 38% of overall class member value); *Julio,* 2015 WL 13919364, at *6-8 (granting fees of 33.3% of common fund resulting in multiplier of 1.27); *Erami v. JP Morgan Chase Bank*, Case No. CV 15-7728 PSG (PLAx), 2018 WL 11352374, *7 (C.D. Cal., Dec. 3, 2018) ("[A]ttorneys' fees in the amount of 33 percent falls within the 30 to 33 percent range often awarded in common fund cases.") (citations omitted); *Attia v. Neiman Marcus Grp.*, 2019 2019 WL 13089601, at *7 (C.D. Cal. Feb. 25, 2019) (citing multiple cases awarding one-third the common fund in fees for wage-and-hour settlements); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (noting that "in most common fund cases, the award exceeds that [25%] benchmark); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving one-third fee request in wage and hour settlement and observing that "fee awards in class actions average around one-third of the recovery."); Newberg on Class Actions at § 11:24; Manual for Complex Litigation at § 14:6.

3. <u>A fee award at one-third the GSA is fair and appropriate given the superior results Class Counsel achieved.</u>

With a fee award of one-third of the Gross Settlement Amount, the Net Settlement Amount to be paid to the 4,412 identified Class Members is estimated to be approximately $8,439,145.62. This will result in an average net recovery (after subtracting the requested attorneys' fees and costs, service award, administration costs, and PAGA allocation), of approximately $1,912.77 per Class Member, not including the additional PAGA award for Class Members who are also PAGA Group

Members. *See* Supplemental Declaration of Lindsey Marquez of Kroll Settlement Administration LLC ("Marquez Decl.") at ¶¶ 17-18.[2] Additionally, the highest settlement payment is $26,438.50 and more than seventy-four (74) Class Members will recover settlement payments that exceed $15,000. *Id.* at ¶ 18. This is an excellent result for the Class, particularly given the hotly contested issues as to what is covered by the mileage-based piece rate, what activities are compensable under California law, the competing expert analyses as to the estimated time spent by Class Members on these activities, and the extraterritorial application of California law, among other contested questions.

As recognized by the Court at preliminary approval (ECF No. 186 at 9:3-6), the recovery Class Counsel obtained for the Class here is exponentially higher than what was achieved in a similar wage-and-hour case also involving CRST: *Leuzinger, et al., v. Gardner Trucking, Inc., et al.,* Case No. 21-cv-04952-YGR (N.D. Cal.) ("*Leuzinger*").

The Northern District of California granted final approval of a class settlement in *Leuzinger* for $4,050,000 on behalf of approximately 12,487 California resident truck driver employees. *See* Berenji Decl., ¶ 38. The average recovery per class member in *Leuzinger* was approximately $206.98. *Id.* In contrast, the average Class Member recovery here will be nine-fold (9x) that amount—*i.e.,* approximately $1,912.77 on average per Class Member, not including the additional PAGA Payments. *See* Marquez Decl., ¶¶ 17-18. In other words, Class Counsel in the instant case secured exponentially more for the Class than *Leuzinger*, which was still

[2] This estimated net recovery is higher than the $1,874 per person estimated at preliminary approval because there are 100 fewer Class Members than originally estimated. *See* Marquez Decl., ¶ 8. It is a net recovery after deductions for attorneys' fees and costs and does not include the additional PAGA Payment. *Id.* at ¶¶ 18-19.

determined to be a reasonable result given all the complexities and risks of the claims.[3]

The strong recoveries for the Class here also exceed the recoveries achieved in other wage and hour settlements awarding one-third the common fund in attorneys' fees. *See, e.g., Attia*, 2019 2019 WL at *7 (finding that $964.22 estimated average per-class member recovery in a wage-and-hour case supported 33.33% fee award); *Julio,* 2015 WL 13919364, at *7 (finding $547 average award supportive of fee award of one-third the total settlement fund); *Abdullah v. U.S. Sec. Assocs., Inc.*, 2017 WL 11630767, at **7-8 (C.D. Cal., Dec. 4, 2017) (finding that average gross award of $948 supported a fee award at one-third of the common fund).

The excellent results and substantial benefits obtained for the class favor an upward adjustment from the benchmark.

4. <u>A fee award at one-third of the GSA also is fair and appropriate because it will result in a negative multiplier on Class Counsel's lodestar.</u>

An award of attorneys' fees at one-third of the total settlement amount is significantly less than Class Counsel's lodestar. Indeed, after deductions for billing judgment, Class Counsel invested nearly 7,400 hours into the case over multiple years to secure the superior Class benefit, resulting in a lodestar of approximately $6,686,464. Berenji Decl., ¶¶ 65, 71; Konecky Decl., ¶¶ 30-31. This translates to a "negative" multiplier of approximately 0.72 and Class Counsel would need to do an additional across-the-board cut of our fees of nearly 28% for the fee request to equal

[3] As part of their diligent efforts in the matter at bar, Class Counsel worked to secure an agreement from CRST that any release in the *Leuzinger* settlement would not bar any individuals who might be class members in both cases from asserting the certified claims here. *See* Berenji Decl. at ¶ 40. This is further evidence of Class Counsel's forethought and skill in safeguarding the superior recovery achieved for the Class here.

out with our lodestar. Konecky Decl., ¶ 32. Further, the foregoing lodestar and multiplier do not account for the additional time spent preparing this fee motion, the motion for final approval, the motion for a service award to Mr. Huckaby, and work that will be performed after final approval to ensure effective implementation of the Settlement Agreement. Berenji Decl., ¶ 72; Konecky Decl., ¶¶ 30, 34.

As discussed in Section IV.D, Class Counsel have submitted detailed billing records and other information to support the reasonableness of the work they undertook, their billing practices, and their billing rates. Berenji Decl., ¶¶ 60-72, Ex. B; Konecky Decl., ¶¶ 26-36, Exs. B1 & B2. This lodestar-multiplier cross-check further supports the reasonableness of Plaintiff's request for an award of attorneys' fees at one-third the GSA. *See* Section IV.D, *infra*.

5. <u>A fee award at one-third the GSA also is fair and appropriate given Class Counsel's efforts and dedication.</u>

Class Counsel made considerable effort over multiple years to secure the Class relief. These efforts included:

- Propounding and responding to requests for production of documents and interrogatories;
- Conducting numerous meet-and-confer negotiations with CRST's counsel in writing and by video conference to ensure CRST's production of important discovery to Plaintiff;
- Conducting numerous meet-and-confer negotiations with CRST's counsel in writing and by video conference to agree upon a reasonable protocol for absent class member discovery;
- Conducting a thorough analysis of more than 425,650 pages of documents (including hundreds of gigabytes of electronic data) ultimately produced by CRST;
- Taking six depositions of CRST's management and expert witnesses;

- Defending the deposition of Plaintiff Huckaby, his two expert witnesses, and eight absent Class Members, including thorough preparation with the witnesses for their depositions;
- Taking persistent and active steps to ensure that related *Leuzinger* settlement would not undercut the relief Class Counsel was seeking (and ultimately obtained) for the Class here;
- Brief writing, legal research, and record review for several important motions, including the contested motion for class certification; CRST's motion for reconsideration of class certification; CRST's motion for class decertification; and the parties' cross-motions for summary judgment;
- Trial preparation, including preparing the joint proposed pretrial conference order, proposed jury instructions, verdict forms, *voir dire* questions, memorandum of contentions of fact and law, statement of the case, deposition designations and objections thereto, trial exhibits and objections thereto, witness lists, and motions *in limine*; and,
- Preparing substantive mediation briefs and participating in four (4) separate mediation sessions over the course of the case, before three (3) separate mediators.

*See* Berenji Decl., ¶ 53. Class Counsel's tireless efforts for four-and-one-half years of active litigation put them in a position to be able to negotiate an excellent result for the Class and PAGA Group Members. *Id.* at ¶ 52.

6. <u>A fee award at one-third of the GSA also is fair and appropriate given the demonstrated skill and experience Class Counsel brought to bear on the case</u>

Class Counsel brought to this case extensive experience and recognized skill in prosecuting class and representative actions for recovery of unpaid wages and wage and hour violations. Class Counsel's declarations document the decades of experience, established qualifications, and highly developed skill sets that they and

their firms brought to bear in this case. *See* Berenji Decl., ¶¶ 2-13, 60-64; Konecky Decl., ¶¶ 6-25, Exs. C-BB. Counsel's qualifications, skills, and experience further support the reasonableness of the fee application here.

7. <u>A fee award at one-third of the GSA also is fair and appropriate given the contingent nature of the fee and risks of nonpayment</u>

Class Counsel assumed a significant risk of non-payment by taking the matter on a fully contingent basis. *See* Berenji Decl., ¶¶ 55-56, 74-76; Konecky Decl., ¶¶ 38-41. Indeed, litigating a class action through a contested motion for class certification, a motion for decertification, and motion for summary judgment, itself carries numerous and substantial risks at every step, from how discovery will proceed, to the way witnesses will testify, to the way the case law will develop, to the way a Court may decide any number of issues pertaining to class certification, discovery, and summary judgment. *Id.*

Within this context, the instant case presented several particularly difficult and complex questions of law and fact, confronting Class Counsel with a heightened risk of being left with nothing after years of intense effort. By way of illustration, the parties sharply disputed how California law might apply to the particular mileage-based piece rate plan here. Berenji Decl., ¶¶ 33-36. To compound the risk, CRST urged throughout that the Court should follow a previous decision from the Central District ruling that CRST's piece-rate compensation system had covered all nondriving tasks associated with safely delivering a load. (*See, e.g.,* CRST's Motion for Summary Judgment, ECF No. 109-1 at 1:24-2:3, 10:3-12:28, 14:17-23, 20:23-21:3 (citing *Cole v. CRST, Inc.*, 2017 WL 1234215 (C.D. Cal. Mar. 30, 2017)).)

Reasonable counsel might conclude that it would be appropriate to settle for less to avoid these headwinds. Nonetheless, Class Counsel took the risks head on, continued to invest significant resources over a period of multiple years to develop the factual record to support their case, and successfully distinguished the prior ruling

in *Cole v. CRST*, among other arguments made by CRST, to defeat CRST's motion for summary judgment. (Berenji Decl., ¶ 32; *see also* Order Denying Motions for Summary Judgment and Denying Motion for Decertification, ECF No. 136 at 9:18-12:14.)

Similarly, CRST's argument that California law could not apply extraterritorially to the Class for their time working outside California presented another serious risk that CRST forcefully presented. (*See, e.g.,* CRST's Opposition to Plaintiff's Motion for Class Certification, ECF No. 47 at 22:22-25:11; CRST's Motion for Summary Judgment, ECF No. 109-1 at 16:19-19:8.) CRST's arguments on extraterritoriality presented the risk of a more narrowly defined class and of not being able to recover wages for nearly 85% of the time the drivers worked. *See* Berenji Decl., ¶ 35. Again, Class Counsel did not avoid litigating the issue for an earlier settlement, as reasonable or practical as doing so might have been. Instead, Class Counsel vigorously pursued and obtained class certification, continued to invest significant time and resources into discovery and depositions, and successfully opposed CRST's motion for summary judgment. (*Id.*; *see also* Order Denying Motions for Summary Judgment and Denying Motion for Decertification, ECF No. 136 at 12:15-14:17.)

These are two specific illustrations that compounded the other significant risks of investing four-and-one-half years of time and resources to litigating the case up until the eve of trial to secure the superior result here. They further support an award of attorneys' fees at one-third the Gross Settlement Amount.

8. <u>The lack of objection from the Class further supports the award of attorneys' fees at one-third of the GSA</u>

The Long-Form Class Notice informed Class and PAGA Group Members that "an amount up to one-third the Gross Settlement Amount ($4,833,333.33) and payment for Class Counsel's litigation costs in an amount expected not to exceed

$410,000.00" would be deducted from the Gross Settlement Fund before distributing the settlement funds to the Class. *See* Long-Form Class Notice, § 5 attached as Exhibit B to Marquez Decl. The Long-Form Class Notice and Postcard Class Notices further advised Class Members that they could object to any aspect of the Settlement Agreement. *Id.* at § 9; Postcard Class Notice attached as Exhibit A to Marquez Decl.

Class Members had sixty days (until October 5, 2026) to submit their objections, and this deadline was extended by 14 days (until October 19, 2026) for any Class Member whose Postcard Class Notice was remailed. *See* Marquez Decl., ¶ 14. As of the date of this filing, zero (0) Class Members have submitted an objection to attorneys' fees and costs in these amounts. *Id.* at ¶¶ 15-17. The lack of objection from the Class Members to the attorneys' fees and costs being sought for the benefits Class Counsel secured on their behalf is yet another reason to approve the attorneys' fees and costs requested here.

**D. The "lodestar-multiplier" cross-check further supports the reasonableness of Plaintiff's fee request**

1. The lodestar-multiplier approach provides a useful perspective on the percentage award.

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino,* 290 F.3d at 1050. Thus, "while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.*

There is a strong presumption that the lodestar amount represents a reasonable fee. *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016). Indeed, prevailing plaintiffs should generally recover their lodestar "unless special circumstances would render such an award unjust." *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (quotation marks omitted) (quoting *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002)). They ordinarily should

be awarded fees that cover "every item of service which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth,* 654 F.3d at 941. This is the "the most useful starting point for determining the amount of a reasonable fee. . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 432, 434 (1983).

2. <u>Class Counsel's billing rates are comfortably within the market range, as shown by numerous previous decisions affirming their rates and recent rate surveys</u>

Hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). The relevant community is the district in which the court sits. *In re Toys "R" Us-Del., Inc. – Fair and Accurate Credit Transaction Act (FACTA) Litig.*, 295 F.R.D. 438, 463 (C.D. Cal. 2014). Rates are reasonable if they fall within the range of prevailing market rates there. *Wilbur v. City of Mount Vernon*, 2014 WL 11961980, at *1 (W.D. Wash. Apr. 15, 2014) (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)).

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

The federal and state courts, including the Central District of California, have consistently approved rates charged by Class Counsel. *See* Konecky Decl., ¶ 37 and Exs. C-BB; Berenji Decl., ¶¶ 12, 70. Indeed, Class Counsel have extensive

experience and accomplishments in class action litigation, including in the wage and hour context, which also demonstrate the reasonableness of their rates here. *See* Berenji Decl., ¶¶ 4-8, 10, 12; Konecky Decl., ¶¶ 7-11 and Exs. A, C-BB.

Courts in the Central District of California have recently approved hourly rates that are significantly higher than Class Counsel's rates—up to $1,700 per hour in class action cases and $1,550 per hour in single-plaintiff civil rights cases. *See, e.g., C.B. v. Moreno Valley Unified Sch. Dist.*, 2025 WL 3040876, at *8 (C.D. Cal. Oct. 3, 2025) (approving hourly rate of $1,550 for partner and $325 per hour for skilled paralegals in a single-plaintiff civil rights case); *In re Loandepot Data Breach Litig.*, 2025 WL 2633063, at *5 (C.D. Cal. Aug. 25, 2025) (approving hourly rate range up to $1,700 per hour for attorney work in privacy class action).

The 2025 Real Rate Report compiled by Wolters Kluwer further shows that Class Counsel's rates are comparable to litigation rates in the Los Angeles market. Berenji Decl., ¶ 67, Ex. C. "Courts regularly consider data from the Real Rate Report to determine a reasonable hourly rate." *Griffin v. City of Los Angeles*, 2026 WL 1747212, at *4 (C.D. Cal. June 11, 2026) (citing *Pritchett v. Slauson Gas Station, LLC*, 2022 WL 319989, at *2 (C.D. Cal. Jan. 10, 2022) ("[T]his Court and others regularly consult the Real Rate Report ... when awarding attorneys' fees because it is based on actual legal billing, matter information, and paid and processed invoices from a wide range of companies.")).

For litigation hourly rates in Los Angeles, the 2025 Real Rate Report documents the following range:

| | **First Quartile** | **Median** | **Third Quartile** |
|---|---|---|---|
| **Partner** | $519 | $875 | $1,334 |
| **Associate** | $461 | $700 | $1,041 |

*See* Wolters Kluwer's 2025 Real Rate Report at p. 20, attached as Exhibit C to Berenji Decl.

Class Counsel's rates are in the third quartile range. *See* Berenji Decl., ¶ 67; Konecky Decl., ¶¶ 33, 36. Class Counsel's declarations demonstrate that they have the experience, skills, and accomplishments to command rates in the third quartile. *See* Berenji Decl., ¶¶ 2-12, 70; Konecky Decl., ¶ 6-11, 36, Ex. A; *see also Griffin*, 2026 WL 1747212, at *4 (affirming SWCK rates based on third quartile of 2025 Real Rate Report).

Additionally, the blended rate resulting from Class Counsel's aggregate hours and lodestar, including both partners and associates, is approximately $907.16/hr. This is approximately $133.84 per hour *below* the third quartile rate for associates alone in the 2025 Real Rate Report. *See Griffin*, 2026 WL 1747212, at *4 (affirming SWCK rates and noting that "Plaintiffs' requested blended rate, $930 per hour, is lower than the listed third quartile rates for both partners and associates.").

The 2025 edition of the Brightflag survey of Hourly Rates in Am Law® 100 Firms shows hourly rates significantly higher than those presented by Class Counsel here. *See* Exhibit D to Berenji Decl. This survey reports: "The blended hourly rate among the Am Law® 100 rose by 8.3% in 2025, reaching $1,145 per hour." *Id.* at 5. Partner rates for litigation range between $1,594 and $960 per hour, and partner rates for Los Angeles are shown at $1,601 per hour, for the top 100 firms. *Id.* at pp. 8, 9. Class Counsel's declarations show that they have the experience, skills, and accomplishments to make them comparable to these firms, yet their billing rates are significantly lower. *See* Berenji Decl., ¶¶ 2-12, 60-65, 70; Konecky Decl., ¶¶ 6-11, 33-36, Exs. A and C-BB.[4]

[4] "[T]he Ninth Circuit has already rejected the contention that attorneys' fee rates should be reduced simply because of the firm's size." *Griffin*, 2026 WL 1747212, at *4 (citing *LA Int'l Corp. v. Prestige Brands Holdings, Inc.*, 168 F.4th 608, 626 (9th Cir. 2026) ("A firm's small size should not automatically result in its attorneys

As one more illustration, a 2023 article from Bloomberg Law News shows top-paid partners rates between $1,110 and $2,250, with most exceeding $2,000 per hour, and top-paid associate rates from $665 to $1,395, with most exceeding $1,000 per hour. *See* Strom, Roy, "*Rising Rates Are Law Firms' Salve as Layoffs and Pay Cuts Surge*," Bloomberg Law News 2023-01-19, at 2-3, attached as Exhibit E to Berenji Decl. Again, Class Counsel's rates are well below those charged by these firms. Konecky Decl., ¶ 33; Berenji Decl., ¶ 65.

Between the numerous court decisions approving Class Counsel's rates, the survey evidence showing similar and higher rates for litigation firms in the Los Angeles legal market, and Class Counsel's extensive experience and accomplishments in class action litigation, including in the wage and hour context, Class Counsel have demonstrated the reasonableness of their rates here.

3. Class Counsel's sworn declarations, including their detailed billing records, show that their time was reasonably spent to achieve superior results

Class Counsel undertook significant work to achieve the results in this case. As documented in Class Counsel's declarations and billing records, the work undertaken for the benefit of the Class included: pre-suit investigations; fact-intensive interviews of Mr. Huckaby and other Class Members; extensive written discovery; ongoing meet and confer with CRST's counsel on discovery and case management issues; full briefing of a contested motion for class certification; full briefing of CRST's motion to reconsider class certification; analysis of more than 425,650 pages of documents and hundreds of gigabytes of electronic data; fourteen non-expert depositions; three expert depositions; substantive analysis of three expert reports and two supplemental reports; full briefing of CRST's motion for class decertification; full briefing of the

receiving a reduced hourly rate. A firm's size does not directly bear on the factors we must consider when awarding fees—the lawyers' skill, experience, and reputation.")).

cross-motions for summary judgment; four separate mediation sessions over the course of the case; and trial preparation, including completing the joint proposed pretrial conference order, proposed jury instructions, verdict forms, *voir dire* questions, memorandum of contentions of fact and law, statement of the case, deposition designations and objections thereto, trial exhibits and objections thereto, witness lists, and motions *in limine*. *See* Berenji Decl., ¶ 53, Ex. B; Konecky Decl., ¶¶ 12-25, Ex. B1.

Class Counsel's declarations present a breakdown of the hours of work and corresponding lodestars on a task-by-task basis in Excel spreadsheets. *See* Exhibit B to Berenji Decl; Exhibit B1 to Konecky Decl. Class Counsel could not have achieved the beneficial Class and PAGA Settlement without undertaking this work at a very high caliber. *See* Berenji Decl., ¶ 52.

The time worked by counsel and their law firms is compensable if "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client." *Hensley*, 461 U.S. at 431. Further, "[w]here the use of the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours." *Schiller v. David's Bridal, Inc.,* No. 1:10–cv–00616–AWI–SKO, 2012 WL 2117001, at *20 (E.D. Cal., June 11, 2012) (citing several authorities including *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting")). The detailed billing records and description of work presented in Class Counsel's declarations provide the Court sufficient information to confirm that the hours are reasonable. *See Curran v. City of Oakland,* 2025 WL 3485360, at *7 (N.D. Cal. Dec. 4, 2025) (citing *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required.")(citations omitted)).

4. <u>An award of attorneys' fees at one-third the GSA will result in a "negative" multiplier on Class Counsel's lodestar</u>

After making deductions in the exercise of billing judgment, Class Counsel's lodestar is approximately $6,686,464. *See* Berenji Decl., ¶¶ 71-72; Konecky Decl., ¶ 31. Thus, awarding fees at the amount requested will result in a "negative" multiplier of approximately 0.72. *See* Berenji Decl., ¶ 71; Konecky Decl., ¶ 32.

This does <u>not</u> include the time spent preparing this fee motion, the motion for final approval of the settlement, the motion for a service award to the class representative, and other work that will occur through and after final approval to ensure effective implementation of the settlement. *See* Berenji Decl., ¶¶ 71-72; Konecky Decl., ¶ 30.

Class Counsel's documented lodestar provides a cross-check to amply support awarding attorneys' fees at one-third the Gross Settlement Amount.

**E. Plaintiff's costs are documented and reasonable**

Class Counsel are entitled to recover the out-of-pocket costs and litigation expenses they reasonably incurred in investigating, prosecuting, and resolving the case. *Staton*, 327 F.3d at 974; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996); *see also* Fed. R. Civ. P. 54(d)(1) ("Costs Other Than Attorney's Fees"); Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and *related nontaxable expenses*….") (emphasis added)). Even if not normally taxable, out-of-pocket expenses incurred by an attorney that would normally be charged to a fee-paying client are recoverable as attorneys' fees. *Chalmers v. City of L.A.*, 796 F.2d 1205, 1216, n.7 (9th Cir. 1986), amended by 808 F.2d 1373 (9th Cir. 1987).

"Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti v. Lojack Corp.*, 2012 WL 3151077, at *12 (C.D. Cal., July 31, 2012); *see also Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015

WL 2438274, at *9 (N.D. Cal. May 21, 2015) (awarding costs for experts out of common fund); *Grant v. T-Mobile USA, Inc.*, No. CV 21-2268-GW-JEMX, 2023 WL 7308311 at *9 (C.D. Cal. Oct. 3, 2023) (same); *Torres v. Flying Food Group, LLC*, No. 2:23-CV-9980-SB-MRW, 2025 WL 2995082 at *3 (C.D. Cal., Feb. 7, 2025) (same).

The Settlement Agreement provides that Class Counsel may seek reimbursement of up to $410,000 in out-of-pocket costs, or the actual out-of-pocket costs, whichever is less. *See* Berenji Decl., Ex. A at § VI.3. Class Counsel have incurred approximately $402,893.72 for expert witness fees, mediation fees, ESI document storage, court reporter fees, court filing fees, travel costs, and copying costs. *See* Berenji Decl., ¶ 73, Ex. F; Konecky Decl., ¶ 45, Ex. CC. Class Counsel's declarations contain ledgers showing each specific cost incurred for which reimbursement is sought. *Id.* These costs were reasonable, were necessary to the prosecution of the case, and are of the type customarily billed to fee-paying clients.

The Long-Form Class Notice also advised Class Members that litigation costs up to $410,000 would be deducted from the Gross Settlement Amount before distribution to the Class, subject to Court approval, and that Class Members could object to any aspect of the Settlement Agreement. *See* Long-Form Class Notice, §§ 5, 9, attached as Exhibit B to Supplemental Marquez Decl.; Postcard Notice attached as Exhibit A to Supplemental Marquez Decl. As of the date of this filing, zero (0) Class Members have submitted an objection to the deduction of attorneys' fees or costs in these amounts. *Id.* at ¶¶ 15-16. The lack of objection to the reimbursement of litigation costs being sought is yet another reason to approve the attorneys' fees and costs requested here.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for Reasonable Attorneys' Fees and Costs.

**BERENJI LAW FIRM, APC**

Dated: October 19, 2026

/s/ *Shadie L. Berenji*
SHADIE L. BERENJI
Class Counsel

**SCHNEIDER WALLACE COTTRELL KIM LLP**

Dated: October 19, 2026

/s/ *Joshua G. Konecky*
JOSHUA G. KONECKY
Class Counsel

# CERTIFICATE OF COMPLIANCE

The undersigned, Class Counsel, certifies that this brief contains 6,858 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 19, 2026

*/s/ Joshua G. Konecky*
Joshua G. Konecky
**SCHNEIDER WALLACE COTTRELL KIM LLP**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 19, 2026, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*<u>/s/ Joshua G. Konecky</u>*
Joshua G. Konecky