Christopher C. McNatt, Jr. (SBN 174559)
cmcnatt@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
2 North Lake Avenue, Suite 560
Pasadena, CA 91101
P: 626-795-4700 | F: 626-795-4790

James H. Hanson, *pro hac vice*
jhanson@scopelitis.com
Andrew J. Ireland, *pro hac vice*
aireland@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-637-1777 | F: 317-687-2414

Charles Andrewscavage, *pro hac vice*
candrewscavage@scopelitis.com
Jared S. Kramer, *pro hac vice*
jskramer@scopelitis.com
Megan R. Escobosa, *pro hac vice*
mescobosa@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
30 West Monroe Street, Suite 1600
Chicago, IL 60603
P: 312-255-7200 | F: 312-422-1224

Attorneys for Defendants,
CRST EXPEDITED, INC. and CRST INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH HUCKABY, individually and on behalf of all other persons similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>CRST EXPEDITED, INC., an Iowa corporation; CRST INTERNATIONAL, INC., an Iowa corporation; and DOES 1 through 30, inclusive,<br><br>Defendants. | Case No. 2:21-cv-07766-ODW-PD<br><br>**DEFENDANTS' OPPOSITION TO SCHELL AND HARDISON'S *EX PARTE* APPLICATION FOR LEAVE**<br><br>Final Approval Hearing: November 16, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Otis D. Wright II<br>Courtroom: 5D<br><br>Action Filed: August 9, 2021<br>Removed: September 29, 2021 |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. RELEVANT BACKGROUND ..... 4

A. Complaint, removal to federal court, and filing of first and second amended complaints. ..... 4

B. The Parties settle the *Huckaby* matter on a classwide basis; the Court approves the Parties' Plan of Notice and Notice of Class and PAGA settlement. ..... 4

C. The third-party administrator sends notice to class members, including Schell and Hardison. ..... 6

D. CRST's counsel provided the *Huckaby* settlement and a warning about its effect months before the exclusion deadlines. ..... 7

III. ARGUMENT ..... 8

A. Schell and Hardison cannot establish that they are "without fault in creating the crisis that requires ex parte relief." ..... 8

B. Schell and Hardison's failure to submit a timely opt-out is not the result of excusable neglect, and no good cause for an extension exists. ..... 9

1. The settlement administration complied with best practicable notice procedures ..... 10

2. Schell and Hardison received Notice of the Settlement and Notice of Class Certification, and their delay in opting out is due to their own inaction. ..... 11

3. Despite CRST informing them that their claims will be released under the settlement terms nearly four months ago, Schell and Hardison still have not opted out. ..... 12

4. Allowing Schell and Hardison to obtain an extension to the deadline to opt out under these circumstances will negatively impact the finality of the judgment in this case. ..... 12

IV. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

## Cases

*Bowman*,
2007 WL 1456037 .......... 10

*Caldwell v. Wells Fargo Bank, N.A.*,
No. 13-CV-1344-LHK, 2013 WL 3789808 (N.D. Cal. July 16, 2013) .......... 2, 8, 9

*Casey v. Albertson's Inc*,
362 F.3d 1254 (9th Cir. 2004) .......... 12

*Flores v. Medifit Corp. Servs., Inc.*,
No. 15-CV-03423-WHO, 2017 WL 550212 (N.D. Cal. Feb. 10, 2017) .......... 3

*Georgine v. Amchem Products, Inc.*,
1995 WL 251402 (E.D.Pa.1995) .......... 12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2014 WL 4446294 (N.D. Cal. Sept. 8, 2014) .......... 3, 11

*In re Gypsum Antitrust Cases*,
565 F.2d .......... 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods.* Liab. Litig.,
895 F.3d 597 (9th Cir. 2018) .......... 10

*Kyle v. Campbell Soup Co.*,
28 F.3d 928 (9th Cir. 1994) .......... 11

*Latshaw v. Trainer Wortham & Co.*,
452 F.3d 1097 (9th Cir. 2006) .......... 12

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) .......... 1, 3, 8

*Ringgold Corp. v. Worrall*,
880 F.2d 1138 (9th Cir. 1989) .......... 9, 11

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) .......... 10, 11

## Rules

Fed. R. Civ. P. 23 .......... 10

Fed. R. Civ. P. 23(c)(2)(B) .......... 5, 10

# I. INTRODUCTION

*Ex parte* applications are "rarely justified," *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995), and that is indeed the case here.

The Settlement Agreement gave class members 60 days from the mailing of the Notices to object, opt out, or dispute workweeks, with an additional 14 days if the Notice was returned and re-mailed. *Settlement Agreement*, ECF No. 183-1, §§ I.25, IV.5. Scott Schell (Schell) had until October 5, 2026, to opt out; Brogan Hardison (Hardison) had until October 19, 2026. *Marquez Decl.*, ECF No. 191-1, ¶ 7(d). Neither submitted an Opt-Out Request to Kroll Settlement Administration LLC (Kroll) by the deadline. *Id.*, ¶ 7(e). Nevertheless, they now seek leave, on an *ex parte* basis, to submit late requests, asserting that they did not receive the mailed Notices. ECF No. 193 at 1–2. The request should be denied, both because Schell and Hardison cannot show *ex parte* relief is warranted and because they are not entitled to relief in any event.

Both Schell and Hardison were sent formal notice of the settlement. On August 6, 2026, Kroll mailed the Court-approved Notice to Schell at his last known address in Morongo Valley, California, via first-class mail, which was not returned to Kroll as undeliverable. *Marquez Decl.*, ECF No. 191-1, ¶ 7(a). Likewise, on August 6, 2026, Kroll mailed the Court-approved Notice to Hardison at his last known address in San Diego, California, via first-class mail. *Id.*, ¶ 7(b). This mailing was returned as undeliverable, so Kroll performed a skip trace and re-mailed the Notice to the updated address in Colorado Springs, Colorado, on August 27, 2026; this re-mailed Notice was not returned to Kroll as undeliverable. *Id.*, ¶¶ 7(b)–(c). As of November 2, 2026, Kroll had not received an Opt-Out Request from either Schell or Hardison. *Id.*, ¶ 7(e).

Schell and Hardison cannot hide behind their unsubstantiated claims that they recently moved addresses. *See Schell Decl.*, ECF No. 193 at 9, ¶ 2; *Hardison Decl.*, ECF No. 193 at 12, ¶ 2. Notice was delivered to all members of the class back at the class certification stage in 2023. *See Order Approving Content and Procedures for Class Notice*, ECF No. 93. That notice, sent more than three years ago, outlined Schell and

Hardison's rights and options, including how they could opt out of the class and who they could contact to do so. *See Notice of Class Action*, ECF No. 92-1. Schell and Hardison received notice of this case in 2023 and make no effort to explain why they were not apprised of their rights at that stage.

More significantly, the attorneys now representing Schell and Hardison received the Settlement Agreement months before either exclusion deadline. On July 9, 2026, Angela Cash, counsel for Defendants in *Cheatham v. CRST International Holdings, LLC*, No. 1:24-cv-00109-CJW-MAR (N.D. Iowa) ("*Cheatham*"), met and conferred with Schnell and Hardison's counsel in the *Cheatham* case to discuss changes to the *Cheatham* notice which would include revisions relating to the release of claims through the settlements in *Huckaby* and another case needing to be reflected in those notice documents. *Cash Decl.*, Ex. A, ¶¶ 1–2. Further, on July 14, 2026, Ms. Cash sent Rachel Mariner the agreement at her request, copying Robert Montes and Marcus Johnson. *Cash Decl.*, Ex. A, ¶¶ 2–3; Ex. B at 2. Another attachment in that email also identified *Huckaby* and expressly warned of the settlement release's potential effect on participation in *Cheatham*. Ex. B at 23. Counsel for Schell and Hardison thus received both the agreement and a specific warning about its relevance to the claims they were pursuing.[1]

So Schell, Hardison, and their counsel received notice of the *Huckaby* settlement and how that settlement would affect Schell and Hardison's rights well in advance of October 5, 2026. But they chose to do nothing with that knowledge and let the opt-out and objection deadlines expire. Schell, Hardison, and their counsel "create[d]" their own "crisis" by "fail[ing] to present requests when they should have." *Caldwell v. Wells Fargo Bank, N.A.*, No. 13-CV-1344-LHK, 2013 WL 3789808, at *3 (N.D. Cal. July 16,

---

[1] Conveniently, Schell and Hardison's declaration omit the dates on which they were first contacted by counsel, the nature of those interactions, or the steps counsel took to explore Schell and Hardison's options before they made their eleventh-hour filing. *Schell Decl.*, ECF No. 193 at 10, ¶ 5; *Hardison Decl.*, ECF No. 193 at 13, ¶ 5.

2013). *Ex parte* relief is not justified under these circumstances. *Mission Power*, 883 F. Supp. at 493.

The appropriateness of *ex parte* relief aside, the Court should also reject Schell and Hardison's request on the merits. Given the notice procedures in this case and their counsel's knowledge of the *Huckaby* settlement, Schell and Hardison cannot establish that their failure to opt-out was the result of "excusable neglect" or that the Court-approved notice procedures did not provide the "best practicable notice." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4446294, at *1 (N.D. Cal. Sept. 8, 2014).

CRST informed Schell and Hardison's counsel of the settlement, as well as the effects of the release contained in the Notice and settlement agreement. Armed with that knowledge and ready access to the *Huckaby* docket, Schell and Hardison's counsel cannot now claim ignorance. Regardless, even if Schell and Hardison's counsel had not received actual notice of the settlement and its effect, the Notice that was sent to class members—which was approved by this Court—itself sufficiently informed class members of the consequences of opting out and of not opting out of the *Huckaby* settlement.

At bottom, Schell and Hardison's counsel knew about the *Huckaby* settlement (and Schell and Hardison themselves knew or should have known) months in advance of October 5, 2026, deadline to opt-out. They did nothing, and that choice has consequences. The Court should not allow them to now seek to avoid those consequences and undermine the finality of the Parties' agreement in the final hours of what has been a long settlement process. CRST respectfully requests the Court deny Schell and Hardison's motion.[2]

---

[2] Notably, denying Schell and Hardison's request relief does not leave them without a remedy. They will still receive their share of the *Huckaby* settlement. To the extent they believe they could have received more by opting out and litigating claims on the merits, their remedy lies elsewhere. *Flores v. Medifit Corp. Servs., Inc.*, No. 15-CV-03423-WHO, 2017 WL 550212, at *2 (N.D. Cal. Feb. 10, 2017) ("If she believes her attorney

## II. RELEVANT BACKGROUND

### A. Complaint, removal to federal court, and filing of first and second amended complaints.

On August 9, 2021, Plaintiff, Keith Huckaby (Huckaby), a former driver for Expedited Solutions, filed a putative class action in Los Angeles County Superior Court. Huckaby alleged various wage-and-hour claims under the California Labor Code, violations of the Fair Credit Reporting Act, a violation of California's Investigative Consumer Reporting Agencies Act, and a violation of California's Unfair Competition Laws. ECF No. 1-1. On September 29, 2021, CRST removed the suit to this Court. ECF No. 1. The Parties thereafter stipulated to two amendments to the Complaint: first to add allegations to Huckaby's second, third, and fourth causes of action, ECF Nos. 40 and 44, and second to incorporate the allegations and claims from the related PAGA action, *Keith Huckaby v. CRST Expedited, Inc., et al.*, in the Los Angeles Superior Court, Case No. 21STCV37657, for purposes of settlement approval only, ECF Nos. 180 and 182. Huckaby voluntarily dismissed the FCRA and ICRAA claims. ECF No. 45; ECF No. 186 at 2 n.2. The operative Second Amended Complaint alleges claims under California law for (1) failure to pay minimum wages; (2) failure to pay statutory/contractual wages; (3) failure to reimburse business expenses; (4) failure to provide itemized wage statements; (5) failure to timely pay wages; (6) unfair competition; and (7) a derivative claim for violation of PAGA. ECF No. 182.

### B. The Parties settle the *Huckaby* matter on a classwide basis; the Court approves the Parties' Plan of Notice and Notice of Class and PAGA settlement.

After more than four years of litigation and four mediations, the Parties reached a settlement on December 18, 2025. ECF No. 186 at 2, 7. The agreement followed

---

erred by failing to timely forward the request, her remedy is a malpractice suit against her counsel, not to belatedly opt out of the settlement.").

extensive discovery, contested class certification and decertification proceedings, cross-motions for summary judgment, and trial preparation. *Berenji Decl.*, ECF No. 183-1, ¶¶ 28–32. The Parties fully executed the Settlement Agreement on March 9, 2026, and Huckaby moved for preliminary approval on March 18, 2026. *Id.*, ¶ 31; ECF No. 183. On June 4, 2026, the Court preliminarily approved the settlement, approved the form and method of notice, appointed Kroll as Settlement Administrator, and set the final approval hearing for November 16, 2026, at 1:30 p.m. ECF No. 186 at 11–12.

The Settlement Agreement provides for a non-reversionary Gross Settlement Amount of $14,500,000. ECF No. 186 at 3–4. The class consists of current and former employees who had a residential address in California, performed work as a truck driver for CRST Expedited, Inc., and were compensated by a piece-rate from August 9, 2017, through April 10, 2023, excluding participants in the settlement of *Montoya v. CRST Expedited, Inc.*, No. 16-cv-10095-PBS (D. Mass.). *Settlement Agreement*, ECF No. 183-1, § I.5. Class members who do not submit a timely and valid Opt-Out Request will receive their proportionate share of the Net Settlement Amount and, upon the Effective Date, release the claims asserted in the Second Amended Complaint and claims that could have been pled based on the facts alleged there. *Id.,* §§ I.9, I.37, VII.2, VIII.1. The release expressly includes claims for unpaid non-driving and sleeper-berth time, claims based on the alleged failure to pay for actual miles driven, and related claims under the FLSA. *Id.,* § I.37.

The approved Notice explained the class members' options: participate by doing nothing, request exclusion by sending a written Opt-Out Request to Kroll, or object while remaining in the settlement. ECF No. 186 at 5. The Long-Form Notice described the claims being released and warned that class members who did not timely opt out would be bound by the settlement and barred from suing or continuing to sue on the Released Class Claims. ECF No. 183-1 at 90–92. The Court found the proposed notice procedures reasonable and the content of the Postcard and Long-Form Notices sufficient under Rule 23(c)(2)(B). ECF No. 186 at 10–11. The ordinary deadline to object, opt out,

or dispute workweeks was 60 days after mailing, with an additional 14 days for class members whose Notice was returned and re-mailed. *Settlement Agreement*, ECF No. 183-1, §§ I.25, IV.5.

**C. The third-party administrator sends notice to class members, including Schell and Hardison.**

Notice of the litigation preceded the settlement. On July 24, 2023, the Court approved the content and procedures for notice to the certified class. ECF No. 93. Settlement Services, Inc. mailed that Notice to 3,962 class members on August 28, 2023, after processing the address list through the National Change of Address database, and performed additional address searches and re-mailings for returned Notices. ECF No. 103; Ex. A, ¶¶ 3–6. A further 550 class members were sent notice on June 4, 2024. ECF No. 118; Ex. A, ¶¶ 3–5. Thus, the August 2026 settlement mailing followed earlier rounds of Court-approved Notice of the class action.

On August 6, 2026, Kroll mailed the Court-approved Notice to Schell at his last known address in Morongo Valley, California. That mailing was not returned as undeliverable. *Marquez Decl.*, ECF No. 191-1, ¶ 7(a). Kroll also mailed the Notice to Hardison at his last known address in San Diego, California, on August 6. That notice was returned as undeliverable on August 20. *Id.*, ¶ 7(b). Kroll then performed a skip trace, located an updated address in Colorado Springs, Colorado, and re-mailed Hardison's notice to that address on August 27. The re-mailed notice was not returned as undeliverable. *Id.*, ¶ 7(c).

The applicable postmark deadline was October 5, 2026, for Schell and October 19, 2026, for Hardison, who received the additional 14 days provided for re-mailed notices. *Id.*, ¶¶ 3, 7(d). Neither submitted an Opt-Out Request to Kroll by his deadline. As of November 2, 2026, Kroll had received no Opt-Out Request from either man and no timely Opt-Out Requests, objections, or workweek disputes from any class member. *Id.*, ¶¶ 4–6, 7(e).

### D. CRST's counsel provided the *Huckaby* settlement and a warning about its effect months before the exclusion deadlines.

Schell and Hardison's counsel also had the Settlement Agreement months before either exclusion deadline. On July 14, 2026, Angela Cash, counsel for CRST in *Cheatham*, emailed Rachel Mariner a copy of the *Huckaby* Settlement Agreement at her request. The email copied Robert Montes, who now appears for Schell and Hardison in this action, and expressly advised that final approval was expected that fall. *See Cash Decl.*, Ex. A, ¶¶ 2–4; Ex. B at 2. The proposed revisions to the *Cheatham* notice, which was attached to that email, also expressly identified *Huckaby* and warned of the settlement release's potential effect on participation in *Cheatham*. Ex. B at 23. Counsel therefore had both the settlement terms and a warning about their relevance before Kroll mailed the settlement notices on August 6, 2026.

Defendants again addressed the settlement in their October 5, 2026 filings in *Cheatham*. Jennifer Abernathy's declaration attached the *Huckaby* Settlement Agreement and preliminary approval order, identified Schell and Hardison as settlement class members, and explained the release of FLSA claims concerning sleeper-berth time, layovers, customer-site waiting, and other waiting time if the settlement received final approval and became effective. *Abernathy Decl.*, ¶¶ 52–55, *Cheatham*, ECF No. 173-1. Counsel therefore had both the settlement terms and a specific identification of their clients as class members by October 5, 2026—two weeks before Hardison's exclusion deadline.

Nevertheless, Schell and Hardison now state that they first learned of *Huckaby* only after October 5, 2026, when their *Cheatham* counsel contacted them. *Schell Decl.*, ECF No. 193 at 10, ¶ 5; *Hardison Decl.*, ECF No. 193 at 13, ¶ 5. Neither declaration identifies the date of that conversation, and Hardison does not state whether counsel contacted him before his October 19 deadline. Their declarations instead assert that they did not receive the mailed notices from the *Huckaby* case and wish to preserve their individual claims. *Id.*, ¶¶ 4–7. Those assertions do not account for counsel's possession

of the Settlement Agreement since July 14, 2026, or the specific information provided in the October 5, 2026, declaration.

By October 23, 2026, defense counsel had notified Kroll that Schell and Hardison claimed not to have received their notices and intended to opt out. *Marquez Decl.*, ECF No. 191-1, ¶ 7. Their counsel advised Class Counsel of the proposed application on November 2 and defense counsel on November 3. ECF No. 193 at 2. Schell and Hardison filed their *ex parte* application on November 9, one week before the final approval hearing. *Id.* at 1–3. The application asks for permission to submit Opt-Out Requests within two days after the Court's order; it does not identify any Opt-Out Request already submitted to Kroll. *Id.* at 1.

## III. ARGUMENT

### A. Schell and Hardison cannot establish that they are "without fault in creating the crisis that requires ex parte relief."

Schell and Hardison concede they must demonstrate they were "without fault in creating the crisis requiring *ex parte* relief." ECF No. 197 at 2. Courts ask whether "parties . . . have failed to present requests when they should have." *Caldwell,* 2013 WL 3789808, at *3. If they did, the application should be denied because "[e]x parte applications are not intended to save the day for parties who have failed to present requests when they should have . . .." *Mission Power*, 883 F. Supp. at 493 (citations omitted). That is the case here. Kroll sent Schell and Hardison the Notice at their last known addresses approximately two months before the close of the settlement opt-out period. *Marquez Decl.*, ECF No. 191-1, ¶ 7. And they had previously been advised of their rights in *Huckaby* when they received the initial class certification notices. *See* ECF No. 103 at p. 5, ¶ 5; ECF No. 118 at p. 5, ¶ 5. Nothing prevented them from taking timely action to opt-out of the *Huckaby* settlement.

Even if the Court accepts Schell and Hardison's representations that they did not receive the Notice, they still cannot demonstrate they did not create this emergency because CRST informed their counsel of the *Huckaby* matter and the *Huckaby* settlement

well before the opt-out deadline in this case. On July 9, 2026, CRST's counsel met and conferred with Schell and Hardison's attorneys on a number of issues, including proposed revisions to the notice in the *Cheatham* lawsuit, which partly concerned revisions relating to the release of claims through the settlements in *Huckaby* and another case that would need to be reflected in those notice documents. Ex. A at ¶ 1–2. On July 14, 2026, counsel for CRST in the *Cheatham* lawsuit emailed Schell and Hardison's attorneys a copy of the *Huckaby* settlement. Ex. A, ¶¶ 1–3; Ex. B.[3] The email included another attachment specifically warning of the *Huckaby* settlements impact. Ex. A, ¶ 3; Ex. B at 23. So three months before the October 5 deadline, Schell and Hardison's own attorneys received notice of the *Huckaby* settlement and its impact on their claims. And that knowledge is imputed to Schell and Hardison. *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141–42 (9th Cir. 1989) (noting clients "are considered to have notice of all facts known to their lawyer-agent.").

Schell and Hardison knew, either from the notices they received or from the notice provided to their attorneys, about the *Huckaby* settlement months before the settlement opt-out period closed. They chose not to act and thus are not "without fault in creating the crisis that [they now claim] requires *ex parte* relief." *Caldwell*, 2013 WL 3789808, at *3.

**B. Schell and Hardison's failure to submit a timely opt-out is not the result of excusable neglect, and no good cause for an extension exists.**

The Court should also deny Schell and Hardison's request because the facts demonstrate that no good cause exists for an extension, and their failure to opt-out on a

---

[3] At this time, Schell and Hardison had already opted into the *Cheatham* case and were represented by Ms. Mariner and Mr. Montes. *See* Plaintiff's Notice of Filing of Consents to Sue, *Cheatham v. CRST International Holdings, LLC et al.*, ECF No. 154, 1:24-cv-00109-CJW-MAR (N.D. Iowa May 15, 2026), attached as Ex. C. Their opt-in consent forms were filed on the *Cheatham* docket on May 15, 2026, and were signed even earlier on February 9, 2026, meaning both Schell and Hardison were represented by Ms. Mariner and Mr. Montes at least as of that date.

timely basis is not the result of excusable neglect. In evaluating whether Schell and Hardison's request for a tardy opt-out should be granted, the Court must consider: (1) the degree of compliance with the best practicable notice procedures; (2) when notice was actually received and if not timely received, why not; (3) what caused the delay, and whose responsibility was it; (4) how quickly the belated opt-out request was made once notice was received; (5) how many class members want to opt out; and (6) whether allowing a belated opt out would affect either the settlement or finality of the judgment. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 618 (9th Cir. 2018) (citing *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994)). These factors weigh in favor of denying Schell and Hardison's request.

**1. The settlement administration complied with best practicable notice procedures**

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with that rule, the notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). While Rule 23 requires that reasonable efforts be made to reach class members, it does not require that each class member actually receive notice. *See Silber*, 18 F.3d at 1454 (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

As the Court held in its preliminary approval order, administration of the Notice here was the "best notice practicable" and "adequately explain[ed] the terms of the Settlement Agreement [and] inform[ed] class members of the rights that will be waived if the Court finally approves the Settlement Agreement." ECF No. 186 at 10–11. The Notice included a description of the nature of the action, the class definition, a complete description of the claims released under the settlement's terms, and it explained the steps class members needed to take to either opt-out from or object to the settlement, along

with the deadline for doing so. *See* ECF No. 183-1 at 84–92. In their brief, Schell and Hardison make no contentions attacking "the degree of compliance with the best practicable notice procedures." Nor could they; the Notice in this case was fully compliant.

**2. Schell and Hardison received Notice of the Settlement and Notice of Class Certification, and their delay in opting out is due to their own inaction.**

Schell and Hardison's assertions that they never received any notice of this action is incredible. As explained above, in addition to mailing notice of settlement in August 2026, notice of class certification was first mailed back in 2023. Whether Schell and Hardison did not read either notice or open them is irrelevant. *See Silber*, 18 F.3d at 1454 (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).[4]

Counsel also represented Schell and Hardison during much of this time, and the Court cannot view Schell and Hardison's claim that they personally never received notice of the settlement in a vacuum. A review of the correspondence submitted with this Opposition makes clear that, beginning as far back as July 2026, counsel for CRST informed Schell and Hardison's counsel about the overlap between their claims and those pending settlement approval in this action. So, Schell and Hardison's attorneys knew about the *Huckaby* settlement and its potential impact at least as of July 2026. And

[4] To be clear, class members are bound by a class settlement even when they don't actually receive notice. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4446294, at *5 ("[E]xperienced counsel know or should know that it is folly to rely solely on receiving mailed notice of a pending class settlement. After all, while individual notice is required for all identifiable class members, even identifiable class members need not actually receive such notice to be bound.") (internal citations omitted).

that knowledge is imputed to their clients. *Ringgold Corp.*, 880 F.2d at 1141–42.[5] This factor weighs against allowing the requested extension and late opt-out.

**3. Despite CRST informing them that their claims will be released under the settlement terms nearly four months ago, Schell and Hardison still have not opted out.**

Consideration of how quickly the belated opt-out request was made once notice was received also weighs against granting Schell and Hardison's request. To this day, Schell and Hardison have not submitted an opt-out request to the administrator. Moreover, they cannot deny that their counsel received Notice of the settlement and its implications for their claims several months before the deadline. Simply put, Schell and Hardison have done nothing to swing this consideration in their favor.

**4. Allowing Schell and Hardison to obtain an extension to the deadline to opt out under these circumstances will negatively impact the finality of the judgment in this case.**

The Ninth Circuit has observed that "in the distribution of a large class action settlement fund, a cutoff date is essential and at some point the matter must be terminated." *See In re Gypsum Antitrust Cases*, 565 F.2d at 1127. Consistent with that principle, courts have recognized the prejudice to defendants that would be caused by granting belated opt-out requests by requiring them "to expense resources defending

[5] Of course, a mistake by counsel is not grounds for excusable neglect. *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931–32 (9th Cir. 1994), *as amended on denial of reh'g* (Apr. 8, 1994) ("In this case, counsel has not presented a persuasive justification for his misconstruction of nonambiguous rules. Accordingly, there is no basis for deviating from the general rule that a mistake of law does not constitute excusable neglect."); *Casey v. Albertson's Inc*, 362 F.3d 1254, 1260 (9th Cir. 2004) (affirming district court's conclusion that "attorneys' alleged inexperience and/or malpractice did not constitute excusable neglect"); *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006) (noting clients are bound by "not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct" and that "[s]uch mistakes are more appropriately addressed through malpractice claims").

against claims [they] reasonably understood were foreclosed. . ..” *Bowman*, 2007 WL 1456037, at *3; *see also Georgine v. Amchem Products, Inc.*, 1995 WL 251402 at *7–8 (E.D.Pa.1995) (holding that allowing belated opt-out request would cause prejudice to defendants because “financial certainty” they sought to achieve by entering into settlement would be undermined by having to litigate additional claims). Allowing Schell and Hardison to belatedly exclude themselves from the settlement release under the circumstances present here would render the cutoff date previously set by the Court effectively meaningless and undermine the finality of the parties’ settlement.

## IV. CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Schell and Hardison’s *Ex Parte* Application for Leave to File Late Requests for Exclusion.

Dated: November 12, 2026

Respectfully submitted,

/s/ *James H. Hanson*
James H. Hanson

*Attorney for Defendants*